UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| MARK MOYAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-0478 (TJK) |
| | ) | |
| DEPARTMENT OF DEFENSE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AND MOTION FOR RELIEF FROM
LOCAL CIVIL RULE 7(N)**

# TABLE OF CONTENTS

Table of Contents ............................................................................................................... ii

Table of Authorities .......................................................................................................... iii

Background ......................................................................................................................... 1

    I.      Revocation of Plaintiff's Security Clearance and Subsequent Applications .......... 1

    II.     Plaintiff's Requests For Records ............................................................................. 5

        A.     USAID .......................................................................................................... 5

        B.     Department of Defense .................................................................................. 8

    III.    Plaintiff's Civil Action .......................................................................................... 11

Legal Standard .................................................................................................................. 12

        A.     Rule 12(b)(1) ............................................................................................... 12

        B.     Rule 12(b)(6) ............................................................................................... 13

Argument .......................................................................................................................... 14

    I.      There Is No Private Right of Action Under the Executive Order ........................ 14

    II.     Plaintiff Has Not Identified A Final Agency Action For Review ....................... 16

    III.    Other Adequate Remedies At Law ....................................................................... 19

    IV.    Plaintiff Has No Claim Under The Declaratory Judgment Act ........................... 21

    V.     The All Writs Act Is Not An Independent Source Of Jurisdiction Or Remedies . 22

    VI.    Defendants Are Entitled To Relief From The Requirements Of Local Civil Rule 7(n) ...................................................................................................................... 23

Conclusion ........................................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Air Transp. Ass'n of Am. v. FAA*,
169 F.3d 1–9 (D.C. Cir. 1999) ............................................................ 16

*Alexander v. Sandoval*,
532 U.S. 275–87 (2001) ...................................................................... 15

*Ali v. Rumsfeld*,
649 F.3d 762 (D.C. Cir. 2011) ............................................................. 21

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) ............................................................................. 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................... 13, 14

*Banneker Ventures, LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015) ................................................... 3, 5, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................. 13

*Blue v. District of Columbia*,
811 F.3d 14 (D.C. Cir. 2015) ............................................................... 13

*Browning v. Clinton*,
292 F.3d 235 (D.C. Cir. 2002) ............................................................. 13

*Carson v. U.S. Off. of Special Couns.*,
563 F. Supp. 2d 286 (D.D.C. 2008) ..................................................... 22

*Coal. for Underground Expansion v. Mineta*,
333 F.3d 193 (D.C. Cir. 2003) ............................................................. 13

*Congress. Oryszak v. Sullivan*,
565 F. Supp. 2d 14 (D.D.C. 2008) ....................................................... 16

*Connecticut v. Department of Interior*,
344 F. Supp. 3d 279 (D.D.C. 2018) ..................................................... 23

*Dantzler v. Dep't of Just., Civ. A. No. 20-1505*
(TNM), 2021 WL 2809125 (D.D.C. July 6, 2021) ............................... 23

*Domestic Sec., Inc. v. SEC,*
    333 F.3d 239 (D.C. Cir. 2003) ........................................................................ 17, 18

*Dufur v. U.S. Parole Comm'n,*
    314 F. Supp. 3d 10 (D.D.C. 2018) ........................................................................ 14

*Feinman v. FBI,*
    713 F. Supp. 2d 70 (D.D.C. 2010) ........................................................................ 20

*Fund for Animals, Inc. v. Bureau of Land Mgmt.,*
    460 F.3d 13 (D.C. Cir. 2006) ................................................................ 16, 17, 19

*Garcia v. Vilsack,*
    563 F.3d 519 (D.C. Cir. 2009) ........................................................................ 19

*Gunn v. Minton,*
    568 U.S. 251 (2013) ........................................................................ 12

*Haines v. Kerner,*
    404 U.S. 519 (1972) ........................................................................ 13

*In re Surface Min. Regul. Litig.,*
    627 F.2d 1346 (D.C. Cir. 1980) ........................................................................ 15, 16

*Indep. Equip. Dealers Ass'n v. EPA,*
    372 F.3d 420 (D.C. Cir. 2004) ........................................................................ 17

*Intelsat USA Sales Corp. v. Juch-Tech, Inc.,*
    935 F.Supp.2d 101 (D.D.C. 2013) ........................................................................ 21

*James Madison Ltd. v. Ludwig,*
    82 F.3d 1085 (D.C. Cir. 1996) ........................................................................ 12

*Jerome Stevens Pharm., Inc. v. FDA,*
    402 F.3d 1249 (D.C. Cir. 2005) ........................................................................ 3

*Kangarloo v. Pompeo,*
    Civ. A. No. 200354 (CJN), 2020 WL 4569341 (D.D.C. Aug. 7, 2020) .................................. 1

*Kenney v. Dep't of Just.,*
    603 F. Supp. 2d 184 (D.D.C. 2009) ........................................................................ 20

*Koutny v. Martin,*
    530 F. Supp. 2d 84 (D.D.C. 2007) ........................................................................ 13

*Malek v. Flagstar Bank,*
    70 F.Supp.3d 23 (D.D.C. 2014) ........................................................................ 22

*Meyer v. Bush,*
    981 F.2d 1288 (D.C. Cir. 1993) ................................................................. 15-16

*Michigan v. Thomas,*
    805 F.2d 176 (6th Cir.1986) ............................................................................. 16

*Mittleman v. U.S. Treasury,*
    773 F. Supp. 442 (D.D.C. 1991) ...................................................................... 20

*Moms Against Mercury v. FDA,*
    483 F.3d 824 (D.C. Cir. 2007) ......................................................................... 12

*Morongo Band of Mission Indians v. FAA,*
    161 F.3d 569 (9th Cir. 1998) ........................................................................... 16

*Motion. Hettinga v. United States,*
    677 F.3d 471 (D.C. Cir. 2012) ........................................................................... 1

*Mulhern v. Gates,*
    525 F. Supp. 2d 174 (D.D.C. 2007) ................................................................ 20

*Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affs.,*
    842 F. Supp. 2d 127 (D.D.C. 2012) ................................................................ 17

*Network IP, LLC v. FCC,*
    548 F.3d 116 (D.C. Cir. 2008) ......................................................................... 12

*Palakuru v. Renaud,*
    521 F. Supp. 3d 46 (D.D.C. 2021) ................................................................... 17

*Ralls Corp. v. Comm. on Foreign Inv. in the U.S.,*
    758 F.3d 296 (D.C. Cir. 2014) ......................................................................... 21

*Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Human Servs.,*
    396 F.3d 1265 (D.C. Cir. 2005) ....................................................................... 19

*Riverkeeper v. Fed. Energy Regul. Comm'n,*
    650 F. Supp. 2d 1121 (D. Or. 2009) ............................................................... 20

*Romero v. Dep't of Def.,*
    527 F.3d 1324 (Fed. Cir. 2008) ....................................................................... 15

*SAE Prods., Inc. v. F.B.I.*,
    589 F. Supp. 2d 76 (D.D.C. 2008) ........................................................... 13

*Sur Contra La Contaminacion v. EPA*,
    202 F.3d 443 (1st Cir. 2000) ................................................................... 16

*Telecomms. Rsch. & Action Ctr. v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984) .................................................................. 22

*Torre v. United States, Civ. A.*
    No. 02-1942, 2004 WL 3710194 (N.D. Cal. Apr. 14, 2004) ................... 15

*Tripp v. Dep't of Def.*,
    193 F. Supp. 2d 229 (D.D.C. 2002) ........................................................ 20

*United States v. Choi*,
    818 F. Supp. 2d 79 (D.D.C. 2011) .......................................................... 22

*Wagdy v. Sullivan*,
    316 F.Supp.3d 257 (D.D.C. 2018) ..................................................... 21-22

*Walsh v. Dep't of Veterans Affs.*,
    400 F.3d 535 ........................................................................................... 20

*Wilson v. McHugh*,
    842 F. Supp. 2d 310 (D.D.C. 2012) ........................................................ 20

**Statutes**

5 U.S.C. § 551 ................................................................................................. 16
5 U.S.C. § 552 (5) ............................................................................. 6, 7, 8, 9, 10, 20
5 U.S.C. § 552a ..................................................................................... 9, 19, 20
5 U.S.C. § 702 ................................................................................................. 15
5 U.S.C. § 704 ........................................................................................... 16, 19
5 U.S.C. § 706 ................................................................................................. 15
28 U.S.C. § 1361 .............................................................................................. 1
28 U.S.C. § 1651 ............................................................................................. 22

Defendants United States Department of Defense ("Defense Department") and the United States Agency for International Development ("USAID"), through undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss the Complaint filed by Plaintiff, Mark Moyar (ECF No. 1) pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6),[1] as well as their motion for relief from the requirements of Local Civil Rule 7(n).

Plaintiff brings Administrative Procedure Act ("APA") claims in this action.  They should be dismissed because there is no private cause of action under Executive Order 12,968, Plaintiff has identified no final agency action for review, and other adequate remedies are available to him via the Freedom of Information Act ("FOIA") or the Privacy Act.  In addition, because this motion is predicated on legal arguments and facts in the Complaint (as illustrated by records incorporated by reference into the Complaint and appended by Defendants), resolution of this dispositive motion does not require review of the administrate record and Defendants are entitled to relief from the requirements of Local Civil Rule 7(n).

## BACKGROUND[2]

### I.   Revocation of Plaintiff's Security Clearance and Subsequent Applications

Plaintiff is a former employee of both Defense Department and USAID.  From July 2015 to July 2017, Plaintiff served as the Director of the Center for Military and Diplomatic History at

---

[1]    In seeking to compel action, Plaintiff brings both a claim under the APA and a mandamus claim under 28 U.S.C. § 1361.  *See* Compl.  As the two claims are functionally identical in this circumstance, *see Kangarloo v. Pompeo*, Civ. A. No. 20-0354 (CJN), 2020 WL 4569341, at *7 (D.D.C. Aug. 7, 2020), Defendants address them together herein.  Indeed, "[b]ecause Plaintiff['s] APA claim fails, mandamus is not available."  *Id.*

[2]    The factual allegations stated herein are drawn from the Complaint and are accepted as true solely for the purposes of this Motion. *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (observing that, in evaluating a motion to dismiss under Rule 12(b)(6), the court must accept

The Foreign Policy Initiative and from July 2017 to February 2018, and Plaintiff served as the Director of the Project on Military and Diplomatic History at Center for Strategic and International Studies.  LinkedIn Page, available at https://www.linkedin.com/in/markmoyar (last visited Jun. 20, 2022).  Plaintiff had also previously held positions at Joint Special Operations University and the US Marine Corps University.  *Id.*

Plaintiff had obtained a security clearance in connection with his work with Defense Department through various contractors.  *See* Compl. ¶¶ 14-15.  In April 2016, Plaintiff submitted a book manuscript entitled *Talented and Unusual Men: The Rise of America's Special Operations Forces* to Defense Department's Office of Prepublication and Security Review ("Defense Prepublication Review"), for prepublication review, as required by his nondisclosure agreement. Compl. ¶ 11.  In April 2017, Plaintiff published the book, now entitled *Oppose Any Foe: The Rise of America's Special Operations Forces*, without having received authorization from Defense Prepublication Review and in violation of his nondisclosure agreement.  Compl. ¶ 12.

In February 2018, Plaintiff joined USAID as a Senior Advisor.  A background investigation was conducted and he was granted a security clearance, which was required for the position. Compl.  ¶ 13.  In July 2018, Moyar was appointed Director of the USAID Office of Civilian Military Cooperation and retained his security clearance.  Compl.  ¶ 14.

In May 2019, USAID received a letter from the United States Special Operations Command ("Special Operations Command") Office of Security stating, "Mr. Moyar authored a publication that contains numerous instances of classified information."  Compl. ¶ 16.  The letter indicated that, as a result, "Mr. Moyar's cleared visit access to USSOCOM facilities ha[d] been

---

a plaintiff's factual allegations as true and "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.").

suspended." *Id.*; Ex. [1] (SOCOM Suspension Letter).[3]   Accordingly, in June 2019, USAID suspended Plaintiff's security clearance pending further investigation.   Compl. ¶ 18; Ex. [2] (USAID Notice of Suspension).   Plaintiff alleges that, in July 2019, USAID informed him that his political appointment would be terminated. Compl. ¶ 19.   USAID also gave Plaintiff the option to resign.   *Id.*   On July 27, 2019, Plaintiff resigned from USAID. *Id.*; Ex. [3] (Moyar Resignation Letter).   Accordingly, USAID did not make a final decision regarding the revocation of his security clearance. *See* Compl. ¶ 39; Ex. [4] (USAID Response to Moyar Re EO Request).

In January 2020, the Defense Counterintelligence and Security Agency's ("DCSA's") Consolidated Adjudications Facility ("Adjudications Facility") was notified that Defense Department's contracting firm, Occam's Razor LLC, was sponsoring Plaintiff for a Defense Industry security clearance. Compl. ¶ 21.[4]   In July 2020, an Adjudications Facility official favorably adjudicated Plaintiff's security clearance eligibility. Compl. ¶ 22.

---

[3]      Although a court may consider materials outside the pleadings to determine whether it has subject-matter jurisdiction over claims, *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005), a motion to dismiss for failure to state a claim must be decided only on the basis of "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice," *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). "Incorporation by reference can also amplify pleadings where the document is not attached by the plaintiff, but is 'referred to in the complaint and integral to the plaintiff's claim.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (cleaned up) (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004). Thus, "[a] district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment." *Id.*

[4]      For policy and historical reasons, the Adjudications Facility processes adjudications under two distinct sets of procedures; one for employees of cleared contractor firms ("industry adjudications") and another for military members and government civilian employees ("non-Industry adjudications", "military adjudications" or "civilian adjudications").   Executive Orders 12,968 "*Access to Classified Information*" (1995), 10,865 "*Safeguarding Classified Information Within Industry*" (1960) govern the former category and DoDD 5220.06, while the latter category is governed by E.O. 12968 and the Department's implementing issuances.   Both types of adjudications apply identical adjudicative standards, promulgated by the Director of National Intelligence ("SEAD 4").

On December 17, 2020, Plaintiff was notified by the Adjudications Facility through his employer, Occam's Razor Technologies, that a preliminary decision had been made to revoke Plaintiff's access to Sensitive Compartmented Information (i.e. his clearance). Ex. [5] (12/17/20 Memo & SOR). The memorandum sent to Plaintiff on December 17, 2020, notified him of his right to respond to the Statement of Reasons provided in support of Defense Department's decision to revoke Plaintiff's access to classified information. Ex. [5] (12/17/20 Memo & SOR). The memorandum also notified Plaintiff of his right to request the records upon which the Adjudications Facility relied on to make the preliminary decision and attached request forms for USAID and the Adjudications Facility. Compl. ¶¶ 26-27; Ex. [5] (12/17/20 Memo & SOR). The December 2020 Statement of Reasons listed two documents under its List of Pertinent Documents: (a) USAID Single Scope Background Investigation Case Number 0052937-C, July 19, 2019, and (b) Mark Alexander Moyar Statement of Subject/Source. Ex. [5] (12/17/20 Memo & SOR).

In January 2021, a substantively similar memorandum and Statement of Reasons was sent to Plaintiff through Defense Department's Washington Headquarters Services under the civilian adjudications format, as Plaintiff had been nominated for a political position in the Defense Department. Compl. ¶¶ 23, 26-27; Ex. [6] (Jan 2021 Mem and SOR). Following the inauguration of Joseph R. Biden as President of the United States, Plaintiff did not receive the political position to which he was appointed by the Trump administration. Compl. ¶ 28.

In February 2021, Plaintiff's contractor employer, Occam's Razor, LLC, initiated another industry clearance request to Defense Department. Compl. ¶ 30. On December 20, 2021, the Adjudications Facility issued the new Statement of Reasons to Plaintiff. Compl. ¶¶ 33-34; Ex. [7] (Dec. 2021 Mem and SOR). The cover letter included with the Statement of Reasons informed Plaintiff that "A *preliminary* determination has been made that it is not clearly consistent with the

national interest for [Plaintiff] to have access to classified information / position of public trust." Ex. [7] (Dec. 2021 Mem and SOR) (emphasis added).  The letter informed Plaintiff that, if he failed to timely respond to the preliminary determination, "[a]ny security clearance or trustworthiness determination that [Plaintiff had] been issued [would] be revoked and any pending security clearance / or trustworthiness determination requested for [Plaintiff would] be denied." *Id.*

The deadline for Plaintiff to respond to the preliminary determination he has received has not yet passed; the Adjudications Facility granted an extension of time for Plaintiff to respond to the Statement of Reasons until July 29, 2022.  Ex. [8] (Declaration of Torrance Jones).  Further extensions of time may be granted depending on Mr. Moyar's circumstances.  *Id.*  No final determination has yet been issued.

## II.  **Plaintiff's Requests For Records**

In his Complaint, Mr. Moyar alleges that "[b]etween 2019 and the present, Moyar has submitted numerous FOIA/PA requests for USAID, SOCOM, DOPSR, and DITMAC records about these allegations of publishing classified information."  Compl. ¶ 40.

### A.  **USAID**

In January 2022, Plaintiff submitted a document request letter to USAID.  Compl. ¶ 35. USAID responded to Plaintiff's documentation request under Executive Order 12968 in January 2022, stating: "As you are aware, your client resigned from USAID before a final determination was made regarding his access to classified information. Accordingly, the Agency never made a final decision regarding denial or revocation. Therefore, the provisions of section 5.2 of [Executive Order] 12968 do not apply."  Compl. ¶ 39; Ex. [4] (USAID Response to Moyar Re EO Request).

On July 9, 2020, Plaintiff submitted a FOIA request to USAID that was assigned FOIA Request No. FP-00020-20.  Ex. [9] (Jan. 14, 2021 USAID Letter).  The request sought various

categories of documents related to Plaintiff's security clearance from July 1, 2018 through July 9, 2020.[5]  *Id.*  On January 14, 2021, USAID issued its first interim response.  *Id.*  USAID informed Plaintiff that the agency had conducted a comprehensive search of its Office of Security and had identified 152 pages of potentially responsive records. *Id.*  Of those pages, USAID had determined that 74 pages records of the records are releasable in their entirety, 77 pages are partially releasable, and 1 page is withheld in its entirety pursuant to Title 5 U.S.C. § 552 (b)(3), (b)(5) and (b)(6) and (b)(7)(C).  *Id.*

On July 15, 2020, Plaintiff (through counsel) submitted a FOIA request to the Defense Department, which was referred to USAID from the Defense Counterintelligence and Security Agency on April 21, 2021, and was assigned FOIA Request No. FP-00005-21. Ex. [10] (May 20, 2022 USAID letter).   In the July 15, 2020 FOIA Request, Plaintiff requested "all information including incident reports and inter-intra agency email or paper correspondence about Mr. Moyar located in systems maintained by DMDC, including but not limited to DISS, DCII, and JPAS." *Id.*  On May 20, 2022, USAID issued a final response to the July 2020 FOIA Request.  *Id.*  USAID informed Plaintiff that it had reviewed the referred DCSA documents containing 234 pages and

---

[5]      Specifically, the Request sought:

1) all information maintained by the Security Office pertaining to him. This includes all information in his "security file" as well as all correspondence-- including email--to or from that office mentioning his name or a case associated with him.

2) all email correspondence sent or received by the Office of the Administrator mentioning his name, but not sent or received by Dr. Moyar

3) all email correspondence exchanged with the White House Presidential Personnel Office by the office responsible for corresponding with that office about political appointees (if not the Office of the Administrator), but not sent or received by Dr. Moyar.

*Id.*

determined 80 pages of the records are releasable in their entirety and 80 pages are partially releasable partially releasable pursuant to Title 5 U.S.C. § 552 (b)(3), (b)(6) and (b)(7)(C). *Id.* USAID also informed Plaintiff that 74 pages consisting of an Equip Investigation on Request (No. 24464327) and a Report of Investigation (Case No. 0052937-C) that was previously released to Plaintiff in FP-00020-20 and, therefore, was not included them in the response. *Id.*

On May 7, 2020, Plaintiff (through counsel) submitted a FOIA request to the Department of Defense, which was referred to USAID on March 24, 2022, and assigned FOIA Request No. FP-00010-22. Ex. [11] (May 18, 2022 USAID Letter). The May 7, 2020 FOIA Request sought "all information on behalf of your client, Mark Moyar, pertaining to a complaint he filed with the DoD OIG on 9/25/19, which was referred to the Whistleblower Retaliation Division and the Joint Staff Division, and any actions taken in response to that complaint. One of the relevant file numbers is 20190930-060615, but there may be others." *Id.* On May 18, 2022, USAID issued its final response and informed Plaintiff that it had reviewed the referred 7-page statement provided by Plaintiff and determined the 7-pages of records are partially releasable pursuant to Title 5 U.S.C. § 552 (b)(6) and (b)(7)(C). *Id.*

On May 7, 2020, Plaintiff (through counsel) submitted a FOIA request to the Department of Defense, which was referred to USAID on May 28, 2022 and assigned FOIA Request No. FP-00018-20. Ex. [12] (May 18, 2022 USAID Letter). The May 7, 2020 FOIA Request sought "all information on behalf of your client, Mark Moyar, pertaining to a complaint he filed with the DoD OIG on 9/25/19, which was referred to the Whistleblower Retaliation Division and the Joint Staff Division, and any actions taken in response to that complaint. One of the relevant file numbers is 20190930-060615, but there may be others." *Id.* On May 18, 2022, USAID issued its final response and informed Plaintiff that it had reviewed the referred 10-page statement provided by

Plaintiff and determined the 10-pages of records are partially releasable pursuant to Title 5 U.S.C. § 552 (b)(6) and (b)(7)(C).  *Id.*

### B.    Department of Defense

The Defense Counterintelligence and Security Agency's FOIA/Privacy Act Office processes Executive Order 12,968 requests with the same staff members and applies the same redaction rules as to requests under the FOIA and the Privacy Act of 1974.  Ex. [8] (Jones Decl.).

On September 25, 2019, Plaintiff submitted a FOIA/Privacy Act request to that National Background Investigations Bureau FOIA/Privacy Act Requests email portal.[6]  Ex. [13] (Nov. 18, 2019 DCSA response).  On November 18, 2019, the Defense Counterintelligence and Security Agency, through its FOIA/Privacy Act Office, acknowledged Plaintiff's request for a copy of his background investigation records formerly maintained by OPM. Ex. [13] (Nov. 18, 2019 DCSA response).  On the same date, the FOIA/Privacy Act Office sent Plaintiff copies of the requested background investigation records, comprising Defense Counterintelligence and Security Agency Privacy Act Request No. 2019-22615.  Ex. [13] (Nov. 18, 2019 DCSA response).

Defense Counterintelligence and Security Agency withheld information from document(s) in accordance with FOIA exemption (b)(3), protecting those records specifically exempt from release by statute, which in this case was section 102(d)(3) of the National Security Act of 1947, and under Privacy Act exemption (j)(1), which applied to systems of records maintained by the Central Intelligence Agency.  Ex. [13] (Nov. 18, 2019 DCSA response).  In addition, the Defense

---

[6]     At the time, the National Background Investigations Bureau was an office within the Office of Personnel Management ("OPM").  On September 29, 2019, OPM and the Defense Department realigned the Bureau with the Defense Counterintelligence and Security Agency. Section 951 of the National Defense Authorization Act of FY18 and Executive Order 13869 provided direction for realigning Bureau personnel, resources, and functions to the Department of Defense.  *See* https://www.defense.gov/News/Releases/Release/Article/1976569/national-background-investigations-bureau-transferred-to-department-of-defense/        (last visited June 9, 2022).

Counterintelligence and Security Agency withheld information on certain document(s) in accordance with Privacy Act Exemption (j)(2) and FOIA Exemption 7(E).[7] Ex. [13] (Nov. 18, 2019 DCSA response).   In the same communication, the Defense Counterintelligence and Security Agency referred Plaintiff to USAID for an investigation that agency conducted on January 10, 2018.  *Id.*

On July 14, 2020, the Defense Counterintelligence and Security Agency responded to Plaintiff's request that a copy of all his investigative and clearance records be provided to counsel. Ex. [14] (July 14, 2020 letters).  Defense Department explained that its records indicated that, on November 18, 2019, Defendant provided and Mr. Moyar confirmed receipt of an electronic .pdf copy of all his maintained previous investigations. *Id.* The letter explained further that Plaintiff's "investigative file contains no subsequent information; therefore, [Defendant] consider[s] his request as being satisfied." *Id.*  The letter explained further that Plaintiff's "request was submitted to the DCSA FOIP Office for Investigations [but] [a]djudication and clearance records are not maintained as part of the investigative file." *Id.*   "In order to obtain these records, a request must be submitted to the Privacy Act office of the federal agency that considered [Plaintiff] for employment and/or granted/denied him a clearance." *Id.*   The letter noted that Defense Counterintelligence and Security Agency "referred [Plaintiff's] request to the Department of Defense Consolidated Adjudications Facility (DoD CAF) Privacy Act Office for an access

---

[7]      Exemption (j)(2) allows for withholding information maintained by an agency or agency component whose main function pertains to enforcing criminal laws. 5 U.S.C. § 552a(j)(2). Exemption (b)(7)(E) protects information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

decision pertaining to any records under their purview, and they will respond directly to [Plaintiff's counsel." *Id.*

On March 31, 2021, the Defense Counterintelligence and Security Agency Consolidated Adjudications Facility FOIA/Privacy Act office responded to Plaintiff on the referral sent to it by the Defense Department's Freedom of Information Division.  Ex. [15] (Mar. 31, 2021 letter).  The Consolidated Adjudications Facility FOIA/Privacy Act office notified Plaintiff that it had identified responsive records that could be released to Plaintiff and that it had identified responsive records including pages that would be withheld under various FOIA exemptions.  *Id.*  The letter further informed Plaintiff that records potentially responsive to his request, which fall under the release authority of the USAID and the DCSA Headquarters, FOIA and Privacy Office, were located." *Id.*  Because the Consolidated Adjudications Facility FOIA/Privacy Act office did not have release authority for those records, it referred Plaintiff's request and responsive record(s) to their Privacy Office(s), for action and direct response to Plaintiff.  *Id.*

On January 5, 2022, Plaintiff submitted the document request form included in the December 2021 Statement of Reasons to the Consolidated Adjudications Facility.  Compl. ¶ 35.  On January 12, 2022, Plaintiff's counsel emailed DCSA, "Also, a significant portion of information relevant to the allegations in this case reside outside of DCSA or USAID; in fact, the bulk of USAID's allegations are 'SOCOM/DITMAC/DOPSR told us xyz.' Can you please issue documentation request forms for me to submit to SOCOM, DITMAC, and DOPSR?"  Compl. ¶ 36.  The Defense Department has not issued any document request forms for [DOPSR, DITMAC, or SOCOM].  Compl. ¶ 37.  On January 26, 2022, Defense Counterintelligence and Security Agency advised Plaintiff's counsel that it would not issue document request forms for the

other agencies because "[t]hose records were not 'relied upon' by [DCSA] for adjudication." Compl. ¶ 37.

### III.   <u>Plaintiff's Civil Action</u>

On February 23, 2022, Plaintiff filed his Complaint, alleging three claims under the APA. ECF No. 1.  First, Plaintiff alleges that the Defense Department failed to provide certain documents to him in violation of the APA.  Compl. ¶¶ 43-49.  Specifically, Plaintiff alleges that he submitted a request for documentation to the Defense Counterintelligence and Security Agency pursuant to Section 5.2(a)(2) of Executive Order 12,968 and that the Defense Counterintelligence and Security Agency has not provided Plaintiff with records from USAID that Plaintiff alleges the Defense Department relied on when it decided to revoke the then-existing security clearance and/or deny subsequent requests for security clearances.  *Id.* ¶¶ 44-45.  Plaintiff alleges that the Defense Department's failure to provide the USAID records constitutes a final agency decision that is actionable under the APA.  *Id*. ¶ 46.

Second, Plaintiff alleges that USAID failed to provide certain documents to him in violation of the APA.  Compl. ¶¶ 50-56.  Specifically, Plaintiff alleges that he submitted a request for documentation to USAID pursuant to Section 5.2(a)(2) of Executive Order 12,968 and that USAID has not provided Plaintiff with records from USAID that Plaintiff alleges Defense Counterintelligence and Security Agency relied on when it decided to revoke the then-existing security clearance and/or deny subsequent requests for security clearances.  *Id.* ¶¶ 51-52.  Plaintiff alleges that USAID's failure to provide the records it sent to the Defense Department constitutes a final agency decision that is actionable under the APA.  *Id*. ¶ 53.

Third, Plaintiff alleges that the Defense Department failed to issue official document request paperwork for him to submit to the Defense Office of Prepublication and Security Review, the Defense Insider Threat Management and Analysis Center, and the United States Special

Operations Command in violation of the APA.  Compl. ¶¶ 57-67.  Specifically, Plaintiff alleges that he submitted a request for official documentation request paperwork to the Defense Counterintelligence and Security Agency pursuant to Section 5.2(a)(2) of Executive Order 12,968 and that the Defense Counterintelligence and Security Agency has not provided Plaintiff with paperwork necessary to request records from  the Defense Office of Prepublication and Security Review, the Defense Insider Threat Management and Analysis Center, and the United States Special Operations Command regarding adjudication of his security clearances.  *Id.* ¶¶ 58-59. Plaintiff alleges that Defense's failure to provide the requested paperwork constitutes a final agency decision that is actionable under the APA.  *Id.* ¶ 60.

## LEGAL STANDARD

### A.      Rule 12(b)(1)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In evaluating a motion to dismiss for lack of subject matter jurisdiction, under Rule 12(b)(1), federal courts must be mindful that they "are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (internal quotation marks omitted).  Indeed, federal courts are "forbidden . . . from acting beyond [their] authority," *Network IP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and therefore, "have an affirmative obligation to consider whether the constitutional and statutory authority exist [. . .] to hear each dispute." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)) (internal quotation marks omitted).  Absent

subject-matter jurisdiction over a case, the court must dismiss it. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(h)(3).

Finally, "[a]lthough 'the District Court may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the complaint standing alone,' 'where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Coal. for Underground Expansion v. Mineta,* 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert,* 974 F.2d at 197); *see also Koutny v. Martin,* 530 F. Supp. 2d 84, 87 (D.D.C. 2007) (in resolving a motion to dismiss pursuant to Rule 12(b)(1), a court "may also consider 'undisputed facts evidenced in the record' ") (internal citations omitted); *see also SAE Prods., Inc. v. F.B.I.,* 589 F. Supp. 2d 76, 79 (D.D.C. 2008).

### B.     Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) is designed to "test[ ] the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.' " *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (internal citation omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Finally, pleadings filed by *pro se* litigants are held to less stringent standards than those drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

On a motion to dismiss, the plaintiff's "well-pleaded factual allegations" are accepted as true. *Iqbal*, 556 U.S. at 679. The Court may consider "any documents either attached to or incorporated in the complaint and matters" subject to judicial notice. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). The Court may, as a result, consider the documents attached to Plaintiff's Complaint. The Court may also consider copies of documents related to Plaintiff's sentencing and parole hearings, which are attached to the Commission's motion to dismiss. *Dufur v. U.S. Parole Comm'n*, 314 F. Supp. 3d 10, 13 (D.D.C. 2018). Although those latter documents were not attached to the complaint, they are arguably referenced in it and are "integral to [the plaintiff's] claim." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)).

## ARGUMENT

As noted above, Plaintiff's APA claims should be dismissed because there is no private cause of action under Executive Order 12,968, Plaintiff has identified no final agency action for review, and other adequate remedies are available to him via FOIA or the Privacy Act. In addition, because this motion is predicated on legal arguments and facts in the Complaint (as illustrated by records incorporated by reference into the Complaint and appended by Defendants), resolution of this dispositive motion does not require review of the administrate record and Defendants are entitled to relief from the requirements of Local Civil Rule 7(n).

## I.     There Is No Private Right of Action Under the Executive Order

Plaintiff cannot assert an APA claim under Executive Order 12,968 because the Executive Order does not create a private cause of action.[8] A person who is "suffering a legal wrong because

---

[8]    "A private right of action is a right by a private party to seek a judicially imposed remedy—such as damages, an injunction, or declaratory relief—to address a violation of law." *Restatement (Fourth) of Foreign Relations Law,* § 311, comment a.

- 14 -

of agency action . . . is entitled to judicial review thereof," 5 U.S.C. § 702, and the Court must "set aside agency action" that is "arbitrary, capricious, . . . or otherwise not in accordance with law," id. § 706(2)(A).  However, nothing in the APA "(1) affects other limitations on judicial review or the power or duty of the court to dismiss any action . . . on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id*. § 702. Although treaties and executive agreements have the force of law, violations of them are "subject to review under the APA" only "when a private right of action is afforded." *See De la Torre v. United States*, Civ. A. No. 02-1942, 2004 WL 3710194, at *8–9 (N.D. Cal. Apr. 14, 2004). Thus, whether a treaty or executive agreement carries the force of law is a separate issue from whether it affords a private right of action.  *See id.*  "[E]xecutive orders without specific foundation in congressional action are not judicially enforceable in private civil suits."  *In re Surface Min. Regul. Litig.*, 627 F.2d 1346, 1357 (D.C. Cir. 1980). "Without [a private remedy derived from Congressional authority], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001).

As the Federal Circuit has observed, Executive Order No. 12,968 provides that it is "intended only to improve the internal management of the executive branch and is not intended to, and does not, create any right to administrative or judicial review, or any other right or benefit." *Romero v. Dep't of Def.*, 527 F.3d 1324, 1330 (Fed. Cir. 2008) (citing Exec. Order No. 12,968 § 7.2(e)). Such language in Executive Orders bars a court from reviewing agency compliance with rules or regulations qualified in that manner. *See Meyer v. Bush*, 981 F.2d 1288, 1297 (D.C. Cir. 1993) ("An Executive Order devoted solely to the internal management of the executive branch—

and one which does not create any private rights—is not, for instance, subject to judicial review.");

*see also Air Transp. Ass'n of Am. v. FAA*, 169 F.3d 1, 8–9 (D.C. Cir. 1999); *Sur Contra La Contaminacion v. EPA*, 202 F.3d 443, 449 (1st Cir. 2000); *Morongo Band of Mission Indians v. FAA*, 161 F.3d 569, 575 (9th Cir. 1998); *Michigan v. Thomas*, 805 F.2d 176, 187 (6th Cir.1986). Moreover, here, the President's authority to issue Executive Order No. 12,968 is derived from the Constitution (Article II), not any act of Congress. *Oryszak v. Sullivan*, 565 F. Supp. 2d 14, 20 n.2 (D.D.C. 2008), *aff'd*, 576 F.3d 522 (D.C. Cir. 2009) ("This does not necessarily imply that the legislature is constitutionally prohibited from regulating the grant or denial of security clearances, see, e.g., 50 U.S.C. § 435b, but the President's initial power to control access to national security information exists antecedent to any statutory grant of authority."). Thus, there is clearly no specific foundation in congressional action that could make the order judicially enforceable in private civil suits. *In re Surface Min. Regul. Litig.*, 627 F.2d at 1357.

Because there is no private cause of action in Executive Order No. 12,968, Plaintiff cannot state an APA claim predicated on violation of the Executive Order. [9]

## II.     Plaintiff Has Not Identified A Final Agency Action For Review

Review under the APA is limited to "final agency action" for which there is no other adequate remedy in a court. 5 U.S.C. § 704. "Whether there has been 'agency action' or 'final agency action' within the meaning of the APA are threshold questions; if these requirements are not met, the action is not reviewable." *Fund for Animals*, 460 F.3d at 18.

An "agency action" is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13). A final agency action "(1) marks the

---

[9]     The D.C. Circuit has advised that such a dismissal in the absence of a cause of action under the APA is not jurisdictional. *Fund for Animals, Inc. v. Bureau of Land Mgmt.*, 460 F.3d 13, 18 n.4 (D.C. Cir. 2006).

consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature; and (2) the action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Domestic Sec., Inc. v. SEC*, 333 F.3d 239, 246 (D.C. Cir. 2003) (internal quotation marks omitted).  Not everything an agency does constitutes final agency action reviewable by the courts.  *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004). "Much of what an agency does is in anticipation of agency action. Agencies prepare proposals, conduct studies, meet with members of Congress and interested groups, and engage in a wide variety of activities that comprise the common business of managing government programs." *Fund for Animals*, 460 F.3d at 19.[10]

Put simply, Plaintiff has not identified any final agency action for the Court to review. There is no indication that either USAID or the Defense Department have taken any action that "marks the consummation of the agency's decision making process" or that the agency has taken action "by which rights or obligations have been determined or from which legal consequences will flow." *Domestic Sec.*, 333 F.3d at 246.  First, USAID was clear in its communications with Plaintiff's counsel that, because "[Plaintiff] resigned from USAID before a final determination was made regarding his access to classified information . . . the Agency never made a final decision regarding denial or revocation."   Compl. ¶ 39; Ex. [4] (USAID Response to Moyar Re EO Request).   Because there was no final decision regarding Plaintiff's security clearance, the provisions of section 5.2 of Executive Order 12,968 did not apply to USAID and there was no

---

[10]     Without a final agency decision, there was no Administrative Record to produce for the Court's review.  *See Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (explaining that "there is no administrative record for a federal court to review" in cases of alleged agency inaction (cleaned up)); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021), *appeal dismissed*, No. 21-5048, 2021 WL 1440155 (D.C. Cir. Apr. 15, 2021) (granting the agency relief from Local Civil Rule 7(n)'s requirement that the agency submit an index of the administrative record because there was not record to produce).

basis for USAID to make any decision for Plaintiff's request for records pursuant to the Executive Order. *See id.*  Because Plaintiff did not accrue any rights under the Executive Order to request records from USAID, the agency's response to Plaintiff regarding his request cannot be considered a "final action" affecting his rights or giving rise to legal consequences. Moreover, to the extent that USAID has been providing records to Plaintiff, it is in the context of FOIA requests (*see* Exs. [9-12]) which, as is discussed below is the proper avenue for Plaintiff to pursue remedies.

Similarly, with respect to the Defense Department, the Defense Counterintelligence and Security Agency's Consolidated Adjudications Facility issued several memoranda regarding their intent to revoke Plaintiff's security clearance with Statements of Reasons.  *See* Exs. [5-7].  The first two Statements of Reasons were withdrawn when Plaintiff left or was not granted the positions for which his clearance was sought.  The third Statement of Reasons that was issued informed Plaintiff that it was a "preliminary determination"—not a final one—and that he is entitled to provide a response to the points raised.  *See* Ex. [7].  Plaintiff has received an extension on his response time, which is due July 29, 2022.  *See* Ex. [8] (Jones Decl.).  Such extensions are granted while "document requests are pending" and "until the individual has received the documents on which the SOR is based."  Ex. [8] (Jones Decl.).  Moreover, as with USAID, the Defense Department has been responding to Plaintiff's document requests through the FOIA / Privacy Act process, which is the appropriate avenue for his dispute. *See* Exs. [13-15].  Plaintiff has not identified any decision by the Defense Department that "marks the consummation of the agency's decision making process" or that the agency has taken action "by which rights or obligations have been determined or from which legal consequences will flow." *Domestic Sec.*, 333 F.3d at 246.

As a result, Plaintiff's APA claim should be dismissed as unreviewable. *See Fund for Animals*, 460 F.3d at 18 (affirming dismissal of claims in the absence of reviewable final agency action).

## III.   Other Adequate Remedies At Law

Plaintiff's APA claims should also be dismissed because Plaintiff has other adequate remedies at law, namely the ability to submit either a FOIA or Privacy Act request.

The APA provides for judicial review of final agency action only where "there is no other adequate remedy in a court." 5 U.S.C. § 704.   "[I]n determining whether an adequate remedy exists, [the D.C. Circuit] has focused on whether a statute provides an independent cause of action or an alternative review procedure." *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005). "[W]here a statute affords an opportunity for *de novo* district-court review [of an administrative denial], the [C]ourt [of Appeals] has held that APA review was precluded because 'Congress did not intend to permit a litigant challenging an administrative denial . . . to utilize simultaneously both [the review provision] and the APA.' " *Id.* (quoting *Env't Def. Fund v. Reilly,* 909 F.2d 1497, 1501 (D.C. Cir. 1990)). Thus, "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Garcia v. Vilsack,* 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *El Rio*, 396 F.3d at 1272). "In evaluating the availability and adequacy of alternative remedies, however, the court must give the APA 'a hospitable interpretation such that only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review.'" *Id.* (quoting *El Rio,* 396 F.3d at 1270).

The Privacy Act prohibits covered agencies from improperly denying access to records they maintain. *See* 5 U.S.C. § 552a(d)(1). Individuals who believe they have been wrongly denied access to records pertaining to them may bring a civil action to compel the agency to disclose the

records.  *See* 5 U.S.C. § 552a(g)(1)(B) (creating cause of action for improper withholding); *id.* § 552a(g)(3)(A)-(B) (outlining relief available in such an action); *Mulhern v. Gates*, 525 F. Supp. 2d 174, 183 (D.D.C. 2007).  Likewise, under the FOIA, Plaintiff would be entitled to records not subject to enumerated exemptions.  *See* 5 U.S.C. § 552(b)(1)-(7).

Numerous courts in this Circuit and other have dismissed APA claims that sought remedies made available by the Privacy Act or FOIA. *See, e.g., Wilson v. McHugh*, 842 F. Supp. 2d 310, 320 (D.D.C. 2012) ("[Plaintiff's] briefing thus suggests that the Privacy Act does form the basis of his claim, and if that is the case, § 704 of the APA precludes this Court's review."); *Feinman v. FBI*, 713 F. Supp. 2d 70, 76 (D.D.C. 2010) (finding no APA jurisdiction for alleged FOIA violations); *Kenney v. Dep't of Just.,* 603 F. Supp. 2d 184, 190 (D.D.C. 2009) (finding that FOIA precluded APA claim that defendant improperly withheld records that were responsive to plaintiff's FOIA request); *Tripp v. Dep't of Def.*, 193 F. Supp. 2d 229, 238 (D.D.C. 2002) ("plaintiff cannot bring an independent APA claim predicated on a Privacy Act violation"); *Mittleman v. U.S. Treasury*, 773 F. Supp. 442, 449 (D.D.C. 1991) (dismissing APA claim that essentially restated plaintiff's Privacy Act claim); *see also, e.g., Walsh v. Dep't of Veterans Affs.,* 400 F.3d 535, 537-38 (7th Cir. 2005) (finding that FOIA precluded APA claim that sought relief for agency's late production of records); *Columbia Riverkeeper v. Fed. Energy Regul. Comm'n,* 650 F. Supp. 2d 1121, 1125-26 (D. Or. 2009) (dismissing FOIA plaintiff's claims under APA seeking adequate search and release of responsive documents).

In this case, both USAID and the Defense Department are subject to the FOIA and Privacy Act.  Plaintiff alleges that he has submitted FOIA and Privacy Act requests to both agencies seeking records about the allegations that he published classified information but has failed to receive the records he seeks.  Compl. ¶ 40.  Plaintiff is also at liberty to submit FOIA and Privacy

Act requests to Defense Department components other than the Adjudications Facility likely to contain records regarding his clearance.  Thus, to the extent that Plaintiff believes he has not been provided with records to which he believes he is entitled, the proper avenue for him to pursue those documents and to challenge the responses of the agencies from which he seeks those records is through the causes of action provided by the FOIA and Privacy Act.  Plaintiff is free to pursue the remedies he seeks under the Privacy Act or the FOIA, but because those statutes provide those remedies, Plaintiff's APA claims should be dismissed.[11]

## IV. Plaintiff Has No Claim Under The Declaratory Judgment Act

Plaintiff invokes the Declaratory Judgment Act as a basis for his suit.  Compl. at 1. However, it is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction and that the availability of declaratory relief presupposes the existence of a judicially remediable right.  *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011). Accordingly, courts in this Circuit have generally found that "[a] count for declaratory judgment 'is not cognizable as a separate cause of action, but is more properly included in the[ ] prayer for relief.'" *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F.Supp.2d 101, 120 (D.D.C. 2013) (alteration in original) (quoting *Walpin v. Corp. for Nat. & Cmty. Serv.*, 718 F.Supp.2d 18, 24 (D.D.C. 2010)); *see also*, *e.g.*, *Wagdy v. Sullivan*, 316 F.Supp.3d 257, 264 (D.D.C. 2018) (treating Declaratory Judgment Act claim as a request for relief in conjunction with other claims in

---

[11]     Whatever procedural protections Plaintiff may have in connection with the proposed revocation of his security clearance, and whatever rights he has to enforce them, Plaintiff does not have a right to access any classified information relied on in making a determination regarding his clearance.  As the D.C. Circuit has recognized, the right to notice of information at issue in an administrative proceeding would not extend to classified national security information. *See Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296,320 (D.C. Cir. 2014) ("a substantial interest in national security supports withholding only the classified information" even where the production of unclassified information is required in an administrative proceeding).

complaint); *Malek v. Flagstar Bank*, 70 F.Supp.3d 23, 28 (D.D.C. 2014) (noting that Declaratory Judgment Act count is not cognizable as a separate cause of action and more properly included in prayer for relief).

As discussed above, there is no private cause of action under Executive Order 12,968 and cannot pursue judicial review under the APA. As a result, Plaintiff's claim cannot provide the judicially remediable right necessary for a claim under the Declaratory Judgment Act. Similarly, because Plaintiff has not identified a final agency action and has other adequate remedies at law— and therefore has no claim under the APA, his purported APA claims cannot serve as the basis for a claim to declaratory relief. As a result, Plaintiff has no independent claims and his purported claim pursuant to the Declaratory Judgment Act should be dismissed.

## V.      The All Writs Act Is Not An Independent Source Of Jurisdiction Or Remedies

Plaintiff also invokes the All Writs Act, 28 U.S.C. § 1651. Compl. at 1. In that Act, Congress provided that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). The All Writs Act "is most commonly invoked by a federal circuit court of appeals to issue a writ of mandamus to a district court judge, or by the Supreme Court to issue a writ to a lower court judge." *United States v. Choi*, 818 F. Supp. 2d 79, 84 (D.D.C. 2011). The D.C. Circuit has acknowledged that "it is firmly established that section 1651 does not expand the jurisdiction of a court." *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C. Cir. 1984). Rather, "the All Writs Act allows the Court to order a remedy only where subject matter jurisdiction already exists." *Carson v. U.S. Off. of Special Couns*., 563 F. Supp. 2d 286, 288 (D.D.C. 2008). As discussed above, this Court does not have jurisdiction under the APA to review Defendants' actions with respect to Plaintiff's document requests and, to the extent that jurisdiction exists, Plaintiff has not stated a cause of action under the APA. Therefore, the All Writs Act does not provide jurisdiction or relief for Plaintiff in the absence of

other grounds therefore.  *See Dantzler v. Dep't of Just.*, Civ. A. No. 20-1505 (TNM), 2021 WL 2809125, at *4 (D.D.C. July 6, 2021) (finding that the All Writs Act could not provide jurisdiction where it had not been independently established).

## VI.    **Defendants Are Entitled To Relief From The Requirements Of Local Civil Rule 7(n)**

Defendants respectfully seek relief from the requirement of Local Civil Rule 7(n) to file a certified list of the contents of the administrative record at this time.  Defendants have conferred with Plaintiff, through counsel, and understand that Plaintiff opposes this motion and intends to file a brief in opposition.

The Local Rule appears to be aimed at dispositive motions where the administrative record is necessary for disposition.  See LcvR 7(n) (cmt.) (Explaining that the purpose of Local Rule 7(n) is "to assist the Court in cases involving a voluminous record by providing the Court with copies of relevant portions of the record relied upon in any dispositive motion.").  Here, Defendants have filed a motion to dismiss that relies exclusively on statutes that preclude Plaintiff's claim.  *See supra*.  As noted, above, the Court may review records incorporated by reference into the Complaint in its assessment of motions to dismiss under Rules 12(b)(1) and 12(b)(6), and may consider additional records in connection with motions to dismiss under Federal Rules 12(b)(1). Defendants have appended certain records incorporated by reference into the Complaint and otherwise relevant to the question of whether Plaintiff may seek judicial review of Defendants' actions under the APA to aid the Court, but Defendants' motion is grounded in questions of jurisdiction and justiciability and does not rely on the contents of the administrative record.

In *Connecticut v. Department of Interior*, 344 F. Supp. 3d 279 (D.D.C. 2018), the Court granted an agency's request to be relieved of any requirement under Local Civil Rule 7(n) because the "Court need not consider the administrative record in evaluating the" motion to dismiss.  *Id*. at 294.  In fact, the *Connecticut* court explained that "[i]n doing so, the Court follows the practice of

other courts in this jurisdiction when "the administrative record is not necessary for [the court's] decision' regarding a motion to dismiss." *Id*. (citing *Mdewakanton Sioux Indians of Minn. v. Zinke¸* 264 F. Supp. 3d 116, 123 n.12 (D.D.C. 2017); *PETA v. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 94 n.2 (D.D.C. 2014)).   Here, if the Court grants the motion to dismiss, it would obviate the need for Defendants to expend the time and effort to compile and file the administrative record, thereby conserving scarce agency resources.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss Plaintiff's claims and grant Defendants relief from the requirements of Local Civil Rule 7(n).

Dated: June 23, 2022
         Washington, DC

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES, D.C. Bar. #481052
                                        United States Attorney

                                        BRIAN P. HUDAK
                                        Chief, Civil Division


                                        By:  _____/s/  Sian Jones_____
                                               SIAN JONES
                                               D.C. Bar # 1024062
                                               Assistant United States Attorney
                                               601 D Street, NW
                                               Washington, DC 20530
                                               Phone: (202) 252-2578
                                               Email: Sian.Jones@usdoj.gov

                                        *Attorneys for the United States of America*