UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK MOYAR,

    *Plaintiff*,

v.

DEPARTMENT OF DEFENSE, et al.,

    *Defendants*.

Civil Action No. 22-478 (TJK)

**MEMORANDUM OPINION**

Mark Moyar sues his former employers, the Department of Defense and the United States Agency for International Development, for violating Executive Order 12,968 by failing to turn over certain documents related to the suspension of his security clearance. Defendants move both to dismiss and for relief from Local Civil Rule 7(n). For the reasons explained below, the Court will grant both motions and dismiss the case.

**I.    Background**

In April 2016, Moyar, who held a security clearance through the Department of Defense ("DOD"), submitted a book manuscript for prepublication review to the Defense Office of Prepublication and Security Review ("DOPSR") within DOD. ECF No. 1 ("Compl.") ¶¶ 5, 11. In April 2017, before that review was complete, Moyar published the book. *Id.* ¶ 12.

In February 2018, Moyar joined the United States Agency for International Development ("USAID"). Compl. ¶ 13. He began as a senior advisor and held a DOD-granted security clearance in connection with that position. *Id.* ¶¶ 13, 15. He was then appointed as Director of USAID's Office of Civilian-Military Cooperation. *Id.* ¶ 14. A year into his tenure, however, DOD's Special Operations Command ("SOCOM") informed USAID that Moyar's book contained

1

classified information, as revealed by a post-publication review. *Id.* ¶¶ 5, 16. USAID therefore "suspended" his clearance in June 2019. *Id.* ¶ 18; ECF No. 7-3 (USAID's suspension letter).[1] USAID told Moyar that his political appointment would be terminated too, but to avoid that outcome, USAID permitted him to resign instead. Compl. ¶ 19.

Moyar obtained another security clearance in July 2020 through a private-contractor sponsorship. Compl. ¶¶ 21–22. In December 2020, he was appointed as a deputy assistant secretary of defense—but then the Defense Counterintelligence Security Agency ("DCSA") "immediately" revoked his clearance based on the earlier allegations that he had published classified information. *Id.* ¶¶ 23–27; *see* ECF No. 7-6 at 2 & ECF No. 7-7 at 2 (DCSA's revocation letters noting this was only a "preliminary decision"). Once President Biden took office, and before Moyar could challenge that revocation, Moyar's political appointment as a deputy assistant secretary was terminated. Compl. ¶¶ 28–29. Shortly after he left DOD, the same private contractor sponsored Moyar for a security clearance once more. *Id.* ¶ 30. This time, DCSA denied his application based on the earlier allegations that Moyar had published classified information. *Id.* ¶ 33; ECF No. 7-8 at 3, 5 (DCSA's application-denial letter noting this was only a "preliminary determination"). In the December 2021 denial letter, DCSA provided instructions to Moyar for requesting a "copy of the report of the investigation compiled by the [DCSA]." Compl. ¶ 34; *see* ECF No. 7-8 at 4.

---

[1] The complaint quotes or incorporates by reference USAID's June 2019 suspension letter, Compl. ¶ 18, as well as the below-mentioned Defense Counterintelligence Security Agency's two "revocation letter[s]," *id.* ¶¶ 23–25, its "December 2021 [application-denial] letter," *id.* ¶ 34, and USAID's January 2022 request-denial letter, *id.* ¶ 39. See ECF Nos. 7-3, 7-6, 7-7, 7-8, 7-5. Thus, the Court may consider these materials at this stage. *See Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

Moyar then requested relevant documents from DCSA as well as USAID. Compl. ¶ 35. DCSA provided only the information it had "created" but not information created by other DOD components or USAID. *Id.* ¶ 38. And USAID refused, explaining to him that his resignation at USAID precluded him from requesting the documents at issue. *See id.* ¶ 39; *see* ECF No. 7-5 (USAID's January 2022 request-denial letter). Moyar also sought documentation-request forms from DCSA that would allow him to request documents from DOD components that he suspects had been involved with the post-publication review: SOCOM, DOPSR, and the DOD Insider Threat Management and Analysis Center. *Id.* ¶¶ 36, 37. DCSA refused these requests. *Id.* And separately, Moyar pursued various requests under the Freedom of Information Act and Privacy Act. *Id.* ¶ 40. Still, he has not received the information sought: "information identifying the classified information he is alleged to have published or the post-publication review which is alleged to have been performed." *Id.* ¶ 40.

After Moyar was rebuffed by the agencies, he sued. All three claims in his complaint turn on his view that Executive Order 12,968, 60 Fed. Reg. 40,245 (1998), entitles him to the information he seeks. The first two claims, against DOD and USAID, allege that those agencies failed to provide the documents at issue in violation of the Executive Order, an action "contrary to law" under the Administrative Procedure Act ("APA"). *See* Compl. ¶¶ 43–56. The third claim against DOD alleges that it failed to "authorize documentation requests" in violation of the Executive Order, which he also maintains is "contrary to law." *See id.* ¶¶ 57–67.[2] For relief, he seeks an order that DOD and USAID turn over the documents and issue the request paperwork to which he believes he is entitled under Executive Order 12,968. *Id.* ¶¶ 49, 56, 67.

---

[2] Moyar does not challenge USAID's suspension of his security clearance, DCSA's revocation of his security clearance, or DCSA's later denial of his security-clearance application.

Defendants move to dismiss Moyar's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and for relief under Local Civil Rule 7(n).

## II.     Legal Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  As federal courts are courts of limited jurisdiction, it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Thus, when faced with a motion to dismiss under Rule 12(b)(1), "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F.Supp.2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  In reviewing such a motion, the Court is not limited to the allegations in the complaint and may consider materials outside the pleadings but must "accept all of the factual allegations in [the] complaint as true." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253–55 (D.C. Cir. 2005) (alteration in original) (quoting *United States v. Gaubert*, 499 U.S. 315, 327 (1991)).

A complaint must be dismissed under Rule 12(b)(6) when it "fail[s] to state a claim upon which relief can be granted."  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Though "a court must accept as true all of the allegations contained in a complaint," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A court may "consider the facts alleged in the complaint, documents attached as exhibits or

incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt*, 226 F. Supp. 2d at 196.

## III. Analysis

The Court has subject-matter jurisdiction over this matter, but Moyar has failed to state a claim. Although Defendants seek dismissal on jurisdictional grounds because the agencies have purportedly not taken final agency action, that does not implicate the Court's subject-matter jurisdiction. But for Moyar to have stated a claim, even accepting as true all the allegations in the complaint, he must plausibly allege entitlement to the documents he seeks under Executive Order 12,968. The problem for Moyar is that neither USAID nor DCSA "determined" that he did "not meet the standards for access to classified information" under the order, a necessary predicate for his claim to the documents. *See* 60 Fed. Reg. at 40,252. Thus, the Court will grant Defendants' motion to dismiss for failure to state a claim.[3]

### A. The Court has Subject-Matter Jurisdiction

Defendants argue that the Court lacks subject-matter jurisdiction "because [Moyar] has not identified a final agency action for review." *See* ECF No. 22 at 6. Defendants are wrong. True, the Court's "authority to review the conduct of an administrative agency is limited to cases challenging 'final agency action.'" *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (quoting 5 U.S.C. § 704). But the D.C. Circuit has held that "where 'judicial review is sought under the APA rather than a particular statute prescribing judicial review, the requirement of final agency action is not jurisdictional.'" *Trudeau v. FTC*, 456 F.3d 178, 184

---

[3] The Court will also grant Defendants' motion for relief from Local Civil Rule 7(n) because the "administrative record is not necessary for the [Court's] decision regarding [the] motion to dismiss." *Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (cleaned up).

(D.C. Cir. 2006) (citation omitted). Thus, the Court has subject-matter jurisdiction over Moyar's claims, and it will assume, without deciding, that he has alleged reviewable final agency action in the form of USAID's and DCSA's decisions that he is not entitled to documents or documentation-request paperwork under Executive Order 12,968. *See e.g.*, *id.* at 191 ("assuming [the agency's action] satisfied the requirement of § 704" because "[w]hether a cause of action exists is not a question of jurisdiction, and may be assumed without being decided" (quoting *Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO*, 498 U.S. 517, 523 n.3 (1991)); *see also Impro Prod., Inc. v. Block*, 722 F.2d 845, 846 (D.C. Cir. 1983) (similar).[4]

### B. Moyar Has Failed to State a Claim

With the Court's subject-matter jurisdiction resolved, it can turn to the issue of whether Moyar has stated a claim. All his claims turn on his allegation that Defendants' actions were "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law" because they violated Section 5.2(a)(2) of Executive Order 12,968. Compl. ¶¶ 46, 52–53, 60; *see* 5 U.S.C. § 706(2)(A). But even accepting his claims as true, he has not plausibly alleged that Defendants violated Section 5.2(a)(2) because they did not "determine[]" that he did "not meet the standards for access to classified information." *See* 60 Fed. Reg. at 40,252.

---

[4] The Court also assumes that the APA is an appropriate vehicle to seek judicial review over alleged violations of Executive Order 12,968—although there are good reasons to think otherwise. For one thing, the order itself states that it does not "create any right to administrative or judicial review." 60 Fed. Reg. at 40,254. For another, the order is "intended only to improve the internal management of the executive branch," *id.*, leading courts to read it to "bar[] a court from reviewing agency compliance with" it, *Romero v. DOD*, 527 F.3d 1324, 1330 n.1 (Fed. Cir. 2008); *cf. Meyer v. Bush*, 981 F.2d 1288, 1296 n.8 (D.C. Cir. 1993) ("An Executive Order devoted solely to the internal management of the executive branch—and one which does not create any private rights—is not . . . subject to judicial review.").

Section 5.2(a)(2) provides that "[a]pplicants and employees who are determined to not meet the standards for access to classified information established in section 3.1 of this order shall be" provided, if requested, the documentation "upon which a denial or revocation is based." 60 Fed. Reg. at 40,252. Thus, for Moyar to be entitled to the information he requested, USAID or DCSA needed to have "determined" that he did "not meet the standards for access to classified information." *See id.* As explained below, Defendants' actions do not fit the bill because they were only initial or preliminary steps toward that possible result.

First, Executive Order 12,968 provides some clues as to what it means to "determine[]" that an individual does "not meet the standards for access to classified information." Section 3.1(b) states that a "determination of eligibility" is a "decision based on judgments by . . . adjudicative personnel." 60 Fed. Reg. at 40,250. And under that section, "eligibility for access to classified information shall be granted only to employees . . . for whom an appropriate investigation has been completed and whose personal and professional history affirmatively indicates loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment, as well as freedom from conflicting allegiances and potential for coercion, and willingness and ability to abide by regulations governing the use, handling, and protection of classified information." *Id.*; *see also, e.g.*, ECF No. 7-6 at 16 & ECF No. 7-7 at 19 (outlining the "National Security Adjudicative Guidelines for Determining Eligibility for Access to Classified Information or Eligibility to Hold a Sensitive Position," which are the guidelines that "shall be used by all Executive Branch Agencies when rendering a final national security eligibility determination"). And, under Section 5.2(a)(6), when an individual's eligibility is so "determined," that person must be "provided an opportunity to appeal in writing to a high level panel." 60 Fed. Reg. at 40,252. Thus, for an individual's eligibility for access to classified information to be

7

"determined," it must derive from an investigation and adjudication, and the individual must be offered a chance to appeal. And all of *that* suggests that such a determination is final, rather than initial or preliminary.

Second, the plain meaning of the words "determination" and "determine" reinforce that conclusion. Both standard and legal dictionaries make clear that the words mean a final decision, not an initial or preliminary one. *See* Webster's Third New International Dictionary 616 (2002) (defining "determination" as "the settling and *ending* of a controversy"; "conclusion"; "the act of deciding *definitely* and firmly" (emphases added)); *id.* (defining "determine" as "to fix conclusively or authoritatively" or "to come to a decision concerning as the result of investigation or reasoning"); *Determination*, Black's Law Dictionary (11th ed. 2019) (defining as the "act of deciding something officially; esp. a *final* decision by a court or administrative agency," and distinguishing "determination" from an "initial determination" (emphasis added)).

Thus, Moyar has failed to state a claim because his security-clearance status was never "determined" by either USAID or DCSA. In the case of USAID, Moyar resigned before any investigation and adjudication were completed. *See* Compl. ¶ 19. USAID only "suspended" Moyar's clearance. *Id*. ¶ 18. And in an accompanying letter, USAID clarified that it "*will* initiate a background investigation" and the resulting information "*will* be adjudicated" according to the National Security Adjudicative Guidelines and other sources "to assess [Moyar's] *continued* eligibility to hold a security clearance." ECF No. 7-3 at 2 (emphases added); *see* Compl. ¶ 18. But Moyar resigned, and so USAID's investigation and adjudication never happened. Compl. ¶ 19. As USAID later explained to Moyar's counsel:

> As you are aware, your client resigned from USAID before a final determination was made regarding his access to classified information. Accordingly, the Agency never made a final decision regarding denial or revocation. Therefore the provisions of section 5.2 of EO 12968 do not apply.

Compl. ¶ 39; ECF No. 7-5 at 2.

Nor did DCSA "determine[]" Moyar's eligibility for access classified information. In December 2020 and January 2021, DCSA made only a "preliminary decision" on the matter, stating its "[i]ntent" to revoke Moyar's access to classified information. *See* ECF No. 7-6 at 2 & ECF No. 7-7 at 2 (emphasis added). Pending Moyar's response and further process, that decision could have "*become a* final security determination," ECF No. 7-6 at 3 & ECF No. 7-7 at 6 (emphasis added), but it never did, because Moyar's job ended with the change in administrations, Compl. ¶¶ 28–29, 31. Then, in December 2021, DCSA made a "preliminary determination" to deny Moyar's new security-clearance application, informing him that his case "will be submitted to an Administrative Judge for a determination as to whether or not to grant, deny, or revoke [his] security clearance," which would be the "final determination." ECF No. 7-8 at 3, 5.[5] As of the complaint's filing, that process remained ongoing. Compl. ¶ 42; ECF No. 7 at 11.[6]

Because Moyar has failed to allege that his eligibility for access to classified information was ever determined under Executive Order 12,968, he has failed to allege he is entitled to any documents or documentation requests "upon which a denial or revocation is based" under Executive Order 12,968. *See* 60 Fed. Reg. at 40,252. And as a result, Defendants could not have acted contrary to law in declining to provide Moyar with such documentation. Thus, Moyar has

---

[5] *See also* DOD Directive 5220.6, Encl. 3 ¶¶ E3.1.7, E3.1.8 (Jan. 2, 1992) ("If the applicant has not requested a hearing . . . , the case shall be assigned to the Administrative Judge for a clearance decision based on the written record."; "If a hearing is requested by the applicant or Department Counsel, the case shall be assigned to the Administrative Judge for a clearance decision based on the hearing record.").

[6] SOCOM's finding, in the post-publication review context, that Moyar's book contained classified information, Compl. ¶ 16, has nothing to do with whether USAID or DCSA later determined Moyar's eligibility to access classified information under Executive Order 12,968.

failed to state a claim under the APA. His failure to allege any violation of Executive Order 12,968 also means he is not entitled to the relief he seeks under the Mandamus Act, Declaratory Judgment Act, or All Writs Act.[7] *See* Compl. ¶¶ 49, 56, 67.

Thus, the Court will grant Defendants' motion to dismiss. Further, because new factual allegations cannot cure the deficiencies in his complaint, the Court's dismissal will be with prejudice. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996).[8]

---

[7] "To show entitlement to mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see* 28 U.S.C. § 1361. That Moyar has failed to allege any agency action contrary to law, necessarily means he also fails to allege Defendants violated a clear duty to act as required for mandamus relief. As for the Declaratory Judgment Act and All Writs Act, Moyar concedes that they do not save his claims if the "Court agree[s] with [Defendants] on the APA and mandamus issues," as the Court does. ECF No. 19 at 12 n.9; *see also C&E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (The "availability of [declaratory] relief presupposes the existence of a judicially remediable right." (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960))); *Fresno Cmty. Hosp. & Med. Ctr. v. Cochran*, 987 F.3d 158, 163 (D.C. Cir. 2021) ("[M]andamus [under the All Writs Act] is proper only when there is . . . a 'clear and indisputable' right to relief." (citation omitted)).

[8] Moyar's filings do not suggest that any amendment to the complaint could cure the deficiencies identified by the Court. Indeed, he concedes that he "never alleged" that USAID or DSCSA "[made] a final decision regarding [his] clearance." ECF No. 19 at 8. He also acknowledges that his resignation at USAID "indefinitely delay[ed] a final adjudication of his clearance issues." *Id.* at 3. He instead asks the Court to give him leave to "file an amended complaint citing to agency regulations" instead of Executive Order 12,968. ECF No. 19 at 8 n.5. But he has identified no regulations that would save his claim, nor is it clear how they could do so.

## IV.     Conclusion

For the above reasons, the Court will grant Defendants' motion to dismiss for failure to state a claim and for relief from Local Civil Rule 7(n).  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 28, 2023