UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK MOYAR, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF DEFENSE <br><br> and <br><br> UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, <br><br> Defendants. | Civil Action No. 1:22-cv-00478 (TJK) |

**FIRST AMENDED COMPLAINT**

Plaintiff Mark Moyar brings this action against Defendants Department of Defense and United States Agency for International Development pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, the Mandamus Act, 28 U.S.C. § 1361, Executive Order 12,968, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651.

**JURISDICTION**

1. This Court has both subject matter jurisdiction over this action and personal jurisdiction over Defendants pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331.

**VENUE**

2. Venue is appropriate under 5 U.S.C. § 703 and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Mark Moyar ("Moyar") is a U.S. citizen and a resident of the Commonwealth of Virginia.

4. Defendant Department of Defense ("DOD") is an agency within the meaning of 5 U.S.C. § 701 and is in possession and/or control of the information requested by Moyar which is the subject of this action.

5. The Defense Counterintelligence and Security Agency ("DCSA"), the Defense Office of Prepublication and Security Review ("DOPSR"), the DOD Insider Threat Management and Analysis Center ("DITMAC"), and United States Special Operations Command ("SOCOM") are DOD components.

6. Defendant United States Agency for International Development ("USAID") is an agency within the meaning of 5 U.S.C. § 701 and is in possession and/or control of the information requested by Moyar which is the subject of this action.

## BACKGROUND

### *PART I: THE SECURITY CLEARANCE APPEALS PROCESS*

7. The federal security clearance adjudication process is generally established by Executive Order 12,968 ("the Executive Order"). Office of the Director of National Intelligence ("ODNI") publications Intelligence Community Directive ("ICD") 704 and its associated Intelligence Community Policy Guidance ("ICPG") 704.3 establish personnel security policy governing eligibility for access to Sensitive Compartmented Information ("SCI")[1] across the

---

[1] SCI is an access control used to further limit access to certain sensitive information beyond its classification. For the intents of this case the distinction is immaterial because DCSA revoked both Moyar's security clearance and SCI access in 2021.

Executive Branch. Each agency also promulgates its own regulations governing its implementation of the Executive Order, ICD 704, and ICPG 704.3.

8. A person who has been denied a security clearance or had a security clearance revoked is entitled to appeal that determination administratively. Even though each agency establishes its own internal procedures, all agencies must provide such a person the minimum amount of due process established by Section 5.2 of the Executive Order ("Section 5.2"). "When an adjudicative determination is made to deny or revoke eligibility for access to classified information or eligibility to hold a sensitive position, review proceedings, to the extent they are made available in EO 12968, as amended, Part 5, shall be afforded covered individuals at a minimum." ODNI, *Security Executive Agent Directive 4: National Security Adjudicative Guidelines* § E(6) (June 8, 2017).

9. A key provision of this due process is the right of a person to know with specificity the information available to the agency before engaging in the appeals process. "Applicants and employees who are determined to not meet the standards for access to classified information established in section 3.1 of this order shall be: . . . provided within 30 days, upon request and to the extent the documents would be provided if requested under the Freedom of Information Act (5 U.S.C. 552) or the Privacy Act (5 U.S.C. 552a), as applicable, any documents, records, and reports upon which a denial or revocation is based." Exec. Order 12,968 § 5.2(a)(2).[2] They are also legally entitled "to request the entire investigative file, as permitted by the national security and other applicable law, which, if requested, shall be promptly provided prior to the time set for a written reply." *Id.* § 5.2(a)(3). This right exists independently of any

---

[2] "Employee" is defined in the Executive Order to include contractors and subcontractors. *Id.* § 1.1(e).

3

statutory rights under the Freedom of Information Act or Privacy Act (collectively "FOIA/PA") and may be exercised without the filing of a request under either of those statutes.

10. ICPG 704.3 provides that any person who has been denied access is entitled "to request any documents, records or reports upon which the denial or revocation is based; and to request the entire investigative file as permitted by the national security and applicable law." ODNI, *ICPG 704.3: Denial or Revocation of Access to Sensitive Compartmented Information, other Controlled Access Program Information, and Appeals Processes* § D(1)(b) (Oct. 2, 2008).

11. DOD Directive ("DODD") 5220.6 and DOD Instruction ("DODI") 5200.02 are DOD's implementing regulations for the Executive Order, ICD 704, and ICPG 704.3.

12. DODD 5220.6 does not explicitly refer to an applicant's right to receive information if he requests a hearing, but it does provide that, if an applicant elects to appeal an adverse decision without a hearing, "Department Counsel shall provide the applicant with a copy of all relevant and material information that could be adduced at a hearing." DOD, *DODD 5220.6: Defense Industrial Personnel Security Clearance Review Program* § E3.1.7 (Jan. 2, 1992).

13. DODI 5200.02 also incorporates by reference DOD Manual ("DODM") 5200.02 and states that "Investigative and adjudicative requirements for SCI eligibility shall be executed in accordance with this Instruction and [DODM 5200.02]." DOD, *DODI 5200.02: DoD Personnel Security Program* Encl. 3 § 2 (Mar. 21, 2014).

14. DODM 5200.02, for its part, explicitly provides, "No unfavorable national security eligibility determination will be made without first: . . . [i]nforming the individual of their right to: . . . [r]equest the documents, records, and reports upon which the unfavorable national security determination was made." DOD, *DODM 5200.02: Procedures for the DoD*

*Personnel Security Program (PSP)* § 10.2 (Apr. 3, 2017). This section is entitled "Minimum Due Process Requirements Applicable to All" and applies, by definition, to both government employees and contractors, since the Manual adopts the definition of employee from the Executive Order. *Id.* § G.2.

15. DODM 5200.02 clearly states that the initial determination to deny or revoke a person's security clearance—called a letter of denial ("LOD") or letter of revocation ("LOR")—is the "unfavorable national security eligibility determination" which triggers the right to request and receive documents. *Id.* § 10.2(a). It equally clearly states that the portion of the process in which a person requests a personal appearance with the Defense Office of Hearings and Appeals ("DOHA") is the "appeal [of] the LOD or LOR." *Id.* § 10.5(d). This decision is therefore a final agency decision for the purpose of triggering due process rights.

16. DCSA is responsible for initially processing the type of DOD security clearance appeals at issue in this case. Final appellate decisions are rendered by an Administrative Judge in DOHA.

17. Automatic Directives System ("ADS") Chapter 566 is USAID's implementing regulation for the Executive Order, ICD 704, and ICPG 704.3.

18. ADS Chapter 566 specifically provides, "Whenever an adverse security clearance action is initiated, the individual subject to the action must be afforded due process." USAID, *ADS Chapter 566: Personnel Security Investigations and Clearances* § 566.3.5.3 (Sept. 26, 2011). The regulation further indicates that the due process required when USAID has taken the adverse action includes providing the individual with "Copies of all relevant documents, Records, and Reports upon which the conclusion to initiate the action is based." *Id.*

### PART II: MOYAR'S SECURITY CLEARANCE PROCEEDINGS

19. In April 2016, Moyar submitted a book manuscript entitled *Talented and Unusual Men: The Rise of America's Special Operations Forces* to DOPSR for prepublication review pursuant to his nondisclosure agreement. This manuscript was exclusively and explicitly sourced from unclassified and publicly available information.

20. In April 2017, after a year of relative inaction from DOPSR despite Moyar's best efforts to complete the review process, Moyar published the book, now entitled *Oppose Any Foe: The Rise of America's Special Operations Forces*.

21. In February 2018, Moyar joined USAID as a Senior Advisor. Due to his position, he was granted a security clearance after a background investigation was conducted.

22. In July 2018, Moyar was appointed Director of the USAID Office of Civilian-Military Cooperation. He retained his active security clearance in this new position.

23. While he was employed by USAID, his security clearance was held by DOD.

24. In May 2019, SOCOM informed the USAID Office of Security that "Mr. Moyar authored a publication that contains numerous instances of classified information." SOCOM further stated that "[t]his fact was established through post-publication review and results have been forwarded to the Department of Defense Insider Threat Management and Analysis Center-Unauthorized Disclosure Program Management Office." SOCOM concluded, "Mr. Moyar's cleared visit access to USSOCOM facilities has been suspended."

25. Prior to this date, Moyar had never been informed that DOPSR had performed a post-publication review of his manuscript or that he was accused of publishing classified information.

26. In June 2019, USAID suspended Moyar's security clearance because SOCOM had accused him of "unauthorized disclosure of classified information."

27. In July 2019, USAID informed Mr. Moyar that his political appointment would be terminated. After he protested, USAID gave him the option to resign, which he accepted.

28. Immediately upon his resignation—and unbeknownst to Moyar at the time he resigned—DCSA determined that his resignation invalidated his right to appeal his adverse security clearance determination.

29. In January 2020, Moyar was sponsored by a private contractor for a DOD security clearance.

30. In July 2020, Moyar was granted a DOD security clearance after a background investigation was conducted.

31. In December 2020, Moyar was appointed as a Deputy Assistant Secretary of Defense.

32. Immediately after his appointment, DCSA revoked Moyar's security clearance based on the allegations of publishing classified information described above which were first made by DOPSR and/or SOCOM and relayed to DCSA by USAID.

33. In January 2021, DCSA reissued the December revocation letter with minor clerical corrections.

34. Both the December 2020 and January 2021 revocation letters included a "List of Pertinent Documents," which included, "United States Agency for International Development (USAID) Single Scope Background Investigation Case Number 0052937-C, July 19, 2019."

35. Both letters also included official documentation request forms to be sent to DCSA and USAID for the relevant records.

36. On 20 January 2021, Joe Biden was inaugurated President of the United States.

37. Immediately after the inauguration, DCSA again informed Moyar that he had no appeal rights because his political appointment had been terminated.

38. In February 2021, Moyar was again sponsored by the same private contractor for a DOD security clearance.

39. In March 2021, DCSA informed the private contractor that an amended revocation letter would be sent to Moyar, which he could then appeal.

40. Between March-December 2021, DCSA repeatedly responded to the private contractor's requests for updates that Moyar's case had been "referred for adjudication."

41. In December 2021, DCSA again denied Moyar's security clearance application based on the allegations of publishing classified information described above which were first made by DOPSR and/or SOCOM and relayed to DCSA by USAID.

42. The December 2021 letter, however, only provided Moyar with the following statement regarding his right to obtain documentation: "If you would like a copy of the report of the investigation as compiled by the Defense Counterintelligence and Security Agency (aka DCSA), please submit a request to Defense Counterintelligence and Security Agency." Even though the letter explicitly referred to the USAID investigation, it provided no rights to obtain documentation from USAID.

43. On 5 January 2022, Moyar submitted the documentation request forms provided in January 2021 to DCSA and USAID.

44. On 12 January 2022, Moyar's undersigned counsel emailed DCSA, "Also, a significant portion of information relevant to the allegations in this case reside outside of DCSA or USAID; in fact, the bulk of USAID's allegations are 'SOCOM/DITMAC/DOPSR told us

xyz.' Can you please issue documentation request forms for me to submit to SOCOM, DITMAC, and DOPSR?"

45. As of this writing, DCSA has repeatedly refused to issue documentation request forms for DOPSR, DITMAC, or SOCOM. On 26 January 2022, a DCSA lawyer advised the undersigned that this was because "[t]hose records were not 'relied upon' by [DCSA] for adjudication."

46. On 27 January 2022, DCSA responded to Moyar's documentation request by sending him only the information created by DCSA. Notably, the response did not include any information which originated with USAID, DOPSR, DITMAC, or SOCOM. Furthermore, none of the information released by DCSA pertained to any of the allegations in the revocation letter.

47. On 19 January 2022, USAID responded to Moyar's documentation request as follows: "As you are aware, your client resigned from USAID before a final determination was made regarding his access to classified information. Accordingly, the Agency never made a final decision regarding denial or revocation. Therefore the provisions of section 5.2 of EO 12968 do not apply."

48. Between 2019 and the present, Moyar has submitted numerous FOIA/PA requests for USAID, SOCOM, DOPSR, and DITMAC records about these allegations of publishing classified information. He has yet to receive any information identifying the classified information that he is alleged to have published or the post-publication review which is alleged to have been performed. This information has not been withheld pursuant to any statutory exemption; the agencies have simply refused to complete their processing of the responsive documents.

49. Due to these agencies' intransigence and delay, Moyar filed this action in February 2022 so that he could finally respond to these allegations—which he denies—after over two years, but is still expected to do so without knowing the specifics of the allegations.

50. Moyar has accordingly been required to request numerous extensions of his appeal deadline, and he now reasonably fears that DCSA will refuse to even adjudicate his appeal.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (APA/MANDAMUS – DOD – FAILURE TO PROVIDE DOCUMENTATION)

51. Moyar repeats and realleges the allegations contained in all paragraphs set forth above.

52. Moyar properly submitted his request for documentation to DCSA as part of an ongoing administrative proceeding. Sections 5.2(a)(2)-(3), as implemented by ICPG 704.3, DODD 5220.6, DODI 5200.02, and DODM 5200.02, governs the processing and release of the requested documentation when sought in the context of the separate administrative proceeding. The duty to provide such information upon request to a person who has had a security clearance denied or revoked is non-discretionary and ministerial in nature.

53. Despite DCSA's clear reliance on information compiled and provided to it by USAID, DCSA has provided no such information to Moyar.

54. The refusal by DCSA to produce the requested documentation constitutes final agency action. This action is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. It also constitutes a violation of a clearly mandated ministerial duty.

55. As a result of DCSA's actions, Moyar has not been able to continue with the ongoing administrative proceeding, thereby causing him adverse and harmful professional and financial effects.

56. Accordingly, Moyar has exhausted all required administrative remedies.

57. Moyar is therefore entitled to relief in the form of either: (a) a declaratory order that DCSA is in violation of Section 5.2 of Executive Order 12,968, ICPG 704.3, DODD 5220.6, DODI 5200.02, and DODM 5200.02, and an injunction compelling DCSA to follow these provisions and immediately provide him with all information pertaining to his security clearance investigation and adjudication to the extent that the information would not be exempt under FOIA/PA, regardless of which agency or component DCSA received it from; or (b) a writ of mandamus ordering DCSA to comply with those provisions and do the same.

58. Furthermore, if DOD carries out its implied cancellation of Baugh's security clearance appeal, Baugh is entitled to an injunction compelling DOD to reopen his appeal upon the conclusion of the instant case, regardless of the outcome of the litigation.

## SECOND CAUSE OF ACTION

## (APA/MANDAMUS – USAID – FAILURE TO PROVIDE DOCUMENTATION)

59. Moyar repeats and realleges the allegations contained in all paragraphs set forth above.

60. Moyar properly submitted his request for documentation to USAID as part of an ongoing administrative proceeding. Sections 5.2(a)(2)-(3), as implemented by ICPG 704.3, DODD 5220.6, DODI 5200.02, and DODM 5200.02, govern the processing and release of the requested documentation when sought in the context of the separate administrative proceeding.

The duty to provide such information upon request to a person who has had a security clearance denied or revoked is non-discretionary and ministerial in nature.

61. Despite DCSA's clear reliance on information compiled and provided to it by USAID, USAID has refused to provide all such information to Moyar, taking the position that it does not have to comply with any of the aforementioned authorities because *it* did not make the adverse decision in question.

62. The refusal by USAID to produce the requested documentation constitutes final agency action. This action is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. It also constitutes a violation of a clearly mandated ministerial duty.

63. As a result of USAID's actions, Moyar has not been able to continue with the ongoing administrative proceeding, thereby causing him adverse and harmful professional and financial effects.

64. Accordingly, Moyar has exhausted all required administrative remedies.

65. Moyar is therefore entitled to relief in the form of either: (a) a declaratory order that USAID is in violation of Section 5.2 of Executive Order 12,968, ICPG 704.3, and ADS Chapter 566, and an injunction compelling USAID to follow these provisions and immediately provide him with all information pertaining to his security clearance investigation and adjudication to the extent that the information would not be exempt under FOIA/PA, regardless of which agency or component USAID received it from; or (b) a writ of mandamus ordering USAID to comply with those provisions and do the same.

## THIRD CAUSE OF ACTION

### (APA/MANDAMUS – DOD – FAILURE TO AUTHORIZE DOCUMENTATION REQUESTS)

66. Moyar repeats and realleges the allegations contained in all paragraphs set forth above.

67. Moyar properly submitted his request for additional documentation request paperwork to DCSA as part of an ongoing administrative proceeding. Sections 5.2(a)(2)-(3), as implemented by ICPG 704.3, DODD 5220.6, DODI 5200.02, and DODM 5200.02, govern the processing and release of the requested documentation when sought in the context of the separate administrative proceeding. The duty to provide such information upon request to a person who has had a security clearance denied or revoked is non-discretionary and ministerial in nature.

68. Despite DCSA's clear reliance on information compiled and provided by USAID based on information maintained by DOPSR, DITMAC, and SOCOM, DCSA has provided no such information to Moyar and has refused to issue official documentation request paperwork for Moyar to submit to those offices.

69. The refusal by DCSA to produce the requested paperwork constitutes final agency action. This action is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. It also constitutes a violation of a clearly mandated ministerial duty.

70. Agencies are not absolutely required to respond to FOIA/PA requests within any fixed amount of time. If an agency fails to issue a final response within twenty business days, the requester may initiate litigation over the request, but the agency is then allowed to take weeks, months, or even years to issue a final response.

71. In contrast, agencies *are* required to release all non-exempt information within thirty days in response to a request made pursuant to Executive Order 12,968, ICPG 704.3, DODD 5220.6, DODI 5200.02, and DODM 5200.02. There is no provision for an extension of this deadline.

72. Upon information and belief, the reason for this discrepancy is that information subject to the aforementioned authorities are necessary for the prescribed due process, because persons who have received an adverse security clearance determination are actively suffering a concrete ongoing harm beyond the simple denial of records.

73. Therefore, by refusing to issue official documentation request paperwork attesting to the fact that the information is being requested as part of an ongoing administrative proceeding, DCSA is harming Moyar by denying him the ability to demonstrate that his requests must be honored within thirty days. As established above, this inability to do so has meant that Moyar is at the mercy of the respective FOIA offices, who have been processing his requests for the relevant information for years.

74. As a result of DCSA's actions, Moyar has not been able to continue with the ongoing administrative proceeding, thereby causing him adverse and harmful professional and financial effects.

75. Accordingly, Moyar has exhausted all required administrative remedies.

76. Moyar is therefore entitled to relief in the form of either: (a) a declaratory order that DCSA is in violation of Section 5.2 of Executive Order 12,968, ICPG 704.3, DODD 5220.6, DODI 5200.02, and DODM 5200.02, and an injunction compelling DCSA to follow that provision and immediately provide him with all necessary documentation-request paperwork for DOPSR, DITMAC, and SOCOM; or (b) a writ of mandamus ordering DCSA to comply with that provision and do the same.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mark Moyar, LLC prays that this Court:

(1) Order the Defense Counterintelligence and Security Agency and United States Agency for International Development to release all requested documentation to him subject to any applicable FOIA/PA exemptions;

(2) Order DCSA to issue official documentation request paperwork for Moyar to submit to the Defense Office of Prepublication and Security Review, the DOD Insider Threat Management and Analysis Center, and United States Special Operations Command;

(3) Order preliminary and permanent injunctive and/or declaratory relief as may be appropriate;

(4) Award reasonable costs and attorneys' fees as provided in 28 U.S.C. § 2412(d) or any other applicable law;

(5) Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

(6) Grant such other relief as the Court may deem just and proper.

Date:   October 15, 2024

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*