# EXHIBIT 2



This version of DoD Directive 5220.6 contains the revised National Security Adjudicative Guidelines issued by the Director of National Intelligence, which are effective for any adjudication on or after June 8, 2017.

# Department of Defense
# DIRECTIVE

**NUMBER** 5220.6
January 2, 1992

Administrative Reissuance Incorporating Through Change 4, April 20, 1999
GC, DoD

SUBJECT: Defense Industrial Personnel Security Clearance Review Program

References: (a) DoD Directive 5220.6, subject as above, August 12, 1985 (hereby canceled)
(b) DoD 5200.2-R, "Department of Defense Personnel Security Program," January 1987, authorized by DoD Directive 5200.2, December 20, 1979
(c) Section 1001 of title 18, United States Code
(d) Section 101 et seq. of title 28, United States Code

## 1. REISSUANCE AND PURPOSE

This Directive reissues reference (a) to update policy, responsibilities, and procedures of the Defense Industrial Personnel Security Clearance Review Program implementing enclosure 1.

## 2. APPLICABILITY AND SCOPE

This Directive:

2.1. Applies to the Office of the Secretary of Defense, the Military Departments, the Chairman of the Joint Chiefs of Staff and the Joint Staff, the Inspector General of the Department of Defense (IG, DoD), and the Defense Agencies (hereafter referred to collectively as "the DoD Components").

2.2. By mutual agreement, also extends to other Federal Agencies that include:

2.2.1. Department of Agriculture.

*DoDD 5220.6, January 2, 1992*

2.2.2. Department of Commerce.

2.2.3. Department of Interior.

2.2.4. Department of Justice.

2.2.5. Department of Labor.

2.2.6. Department of State.

2.2.7. Department of Transportation.

2.2.8. Department of Treasury.

2.2.9. Environmental Protection Agency.

2.2.10. Federal Emergency Management Agency.

2.2.11. Federal Reserve System.

2.2.12. General Accounting Office.

2.2.13. General Services Administration.

2.2.14. National Aeronautics and Space Administration.

2.2.15. National Science Foundation.

2.2.16. Small Business Administration.

2.2.17. United States Arms Control and Disarmament Agency.

2.2.18. United States Information Agency.

2.2.19. United States International Trade Commission.

2.2.20. United States Trade Representative.

2.3. Applies to cases that the Defense Industrial Security Clearance Office
(DISCO) forwards to the Defense Office of Hearings and Appeals (DOHA), Defense
Legal Services Agency for action under this Directive to determine whether it is clearly

consistent with the national interest to grant or continue a security clearance for the applicant.

2.4.  Provides a program that may be extended to other security cases at the direction of the Assistant Secretary of Defense for Command, Control, Communications, and Intelligence (ASD(C3I)).

2.5.  Does not apply to cases in which:

2.5.1.  A security clearance is withdrawn because the applicant no longer has a need for access to classified information;

2.5.2.  An interim security clearance is withdrawn by the DISCO during an investigation; or

2.5.3.  A security clearance is withdrawn for administrative reasons that are without prejudice as to a later determination of whether the grant or continuance of the applicant's security clearance would be clearly consistent with the national interest.

2.6.  Does not apply to cases for access to sensitive compartmented information or a special access program.


3.  <u>DEFINITIONS</u>

3.1.  <u>Applicant</u>.  Any U.S. citizen who holds or requires a security clearance or any immigrant alien who holds or requires a limited access authorization for access to classified information needed in connection with his or her employment in the private sector; any U.S. citizen who is a direct-hire employee or selectee for a position with the North Atlantic Treaty Organization (NATO) and who holds or requires NATO certificates of security clearance or security assurances for access to U.S. or foreign classified information; or any U.S. citizen nominated by the Red Cross or United Service Organizations for assignment with the Military Services overseas.  The term "applicant" does not apply to those U.S. citizens who are seconded to NATO by U.S. Departments and Agencies or to U.S. citizens recruited through such Agencies in response to a request from NATO.

3.2.  <u>Clearance Decision</u>.  A decision made in accordance with this Directive concerning whether it is clearly consistent with the national interest to grant an applicant a security clearance for access to Confidential, Secret, or Top Secret information.  A favorable clearance decision establishes eligibility of the applicant to

be granted a security clearance for access at the level governed by the documented need for such access, and the type of investigation specified for that level in DoD 5200.2-R (reference (b)). An unfavorable clearance decision denies any application for a security clearance and revokes any existing security clearance, thereby preventing access to classified information at any level and the retention of any existing security clearance.

## 4. POLICY

It is DoD policy that:

4.1. All proceedings provided for by this Directive shall be conducted in a fair and impartial manner.

4.2. A clearance decision reflects the basis for an ultimate finding as to whether it is clearly consistent with the national interest to grant or continue a security clearance for the applicant.

4.3. Except as otherwise provided for by E.O. 10865 (enclosure 1) or this Directive, a final unfavorable clearance decision shall not be made without first providing the applicant with:

4.3.1. Notice of specific reasons for the proposed action.

4.3.2. An opportunity to respond to the reasons.

4.3.3. Notice of the right to a hearing and the opportunity to cross-examine persons providing information adverse to the applicant.

4.3.4. Opportunity to present evidence on his or her own behalf, or to be represented by counsel or personal representative.

4.3.5. Written notice of final clearance decisions.

4.3.6. Notice of appeal procedures.

4.4. Actions pursuant to this Directive shall cease upon termination of the applicant's need for access to classified information except in those cases in which:

4.41. A hearing has commenced.

4.4.2. A clearance decision has been issued; or

4.4.3. The applicant's security clearance was suspended and the applicant provided a written request that the case continue.

## 5. RESPONSIBILITIES

5.1. The <u>Assistant Secretary of Defense for Command, Control, Communications, and Intelligence</u> shall:

5.1.1. Establish investigative policy and adjudicative standards and oversee their application.

5.1.2. Coordinate with the General Counsel of the Department of Defense (GC, DoD) on policy affecting clearance decisions.

5.1.3. Issue clarifying guidance and instructions as needed.

5.2. The <u>General Counsel of the Department of Defense</u> shall:

5.2.1. Establish guidance and provide oversight as to legal sufficiency of procedures and standards established by this Directive.

5.2.2. Establish the organization and composition of the DOHA.

5.2.3. Designate a civilian attorney to be the Director, DOHA.

5.2.4. Issue clarifying guidance and instructions as needed.

5.2.5. Administer the program established by this Directive.

5.2.6. Issue invitational travel orders in appropriate cases to persons to appear and testify who have provided oral or written statements adverse to the applicant relating to a controverted issue.

5.2.7. Designate attorneys to be Department Counsels assigned to the DOHA to represent the Government's interest in cases and related matters within the applicability and scope of this Directive.

5.2.8.  Designate attorneys to be Administrative Judges assigned to the DOHA.

5.2.9.  Designate attorneys to be Administrative Judge members of the DOHA Appeal Board.

5.2.10.  Provide for supervision of attorneys and other personnel assigned or attached to the DOHA.

5.2.11.  Develop and implement policy established or coordinated with the GC, DoD, in accordance with this Directive.

5.2.12.  Establish and maintain qualitative and quantitative standards for all work by DOHA employees arising within the applicability and scope of this Directive.

5.2.13.  Ensure that the Administrative Judges and Appeal Board members have the requisite independence to render fair and impartial decisions consistent with DoD policy.

5.2.14.  Provide training, clarify policy, or initiate personnel actions, as appropriate, to ensure that all DOHA decisions are made in accordance with policy, procedures, and standards established by this Directive.

5.2.15.  Provide for maintenance and control of all DOHA records.

5.2.16.  Take actions as provided for in subsection 6.2., below, and the additional procedural guidance in enclosure 3.

5.2.17.  Establish and maintain procedures for timely assignment and completion of cases.

5.2.18.  Issue guidance and instructions, as needed, to fulfill the foregoing responsibilities.

5.2.19.  Designate the Director, DOHA to implement paragraphs 5.2.5. through 5.2.18., above, under general guidance of the GC, DoD.

5.3.  The Heads of the DoD Components  shall provide (from resources available to the designated DoD Component) financing, personnel, personnel spaces, office facilities, and related administrative support required by the DOHA.

*DoDD 5220.6, January 2, 1992*

5.4.  The <u>ASD(C3I)</u> shall ensure that cases within the scope and applicability of this Directive are referred promptly to the DOHA, as required, and that clearance decisions by the DOHA are acted upon without delay.

## 6. PROCEDURES

6.1.  Applicants shall be investigated in accordance with the standards in DoD 5200.2-R (reference (b)).

6.2.  An applicant is required to give, and to authorize others to give, full, frank, and truthful answers to relevant and material questions needed by the DOHA to reach a clearance decision and to otherwise comply with the procedures authorized by this Directive.  The applicant may elect on constitutional or other grounds not to comply; but refusal or failure to furnish or authorize the providing of relevant and material information or otherwise cooperate at, any stage in the investigation or adjudicative process may prevent the DOHA from making a clearance decision.  If an applicant fails or refuses to:

6.2.1.  Provide relevant and material information or to authorize others to provide such information; or

6.2.2.  Proceed in a timely or orderly fashion in accordance with this Directive; or

6.2.3.  Follow directions of an Administrative Judge or the Appeal Board; then the Director, DOHA, or designee, may revoke any security clearance held by the applicant and discontinue case processing.  Requests for resumption of case processing and reinstatement of a security clearance may be approved by the Director, DOHA, only upon a showing of good cause.  If the request is denied, in whole or in part, the decision is final and bars reapplication for a security clearance for 1 year from the date of the revocation.

6.3.  Each clearance decision must be a fair and impartial common sense determination based upon consideration of all the relevant and material information and the pertinent criteria and adjudication policy in enclosure 2, including as appropriate:

6.3.1.  Nature and seriousness of the conduct and surrounding circumstances.

*DoDD 5220.6, January 2, 1992*

6.3.2. Frequency and recency of the conduct.

6.3.3. Age of the applicant.

6.3.4. Motivation of the applicant, and the extent to which the conduct was negligent, willful, voluntary, or undertaken with knowledge of the consequences involved.

6.3.5. Absence or presence of rehabilitation.

6.3.6. Probability that the circumstances or conduct will continue or recur in the future;

6.4. Whenever there is a reasonable basis for concluding that an applicant's continued access to classified information poses an imminent threat to the national interest, any security clearance held by the applicant may be suspended by the ASD(C3I), with the concurrence of the GC, DoD, pending a final clearance decision. This suspension may be rescinded by the same authorities upon presentation of additional information that conclusively demonstrates that an imminent threat to the national interest no longer exists. Procedures in enclosure 3 shall be expedited whenever an applicant's security clearance has been suspended pursuant to this subsection.

6.5. Nothing contained in this Directive shall limit or affect the responsibility and powers of the Secretary of Defense or the head of another Department or Agency to deny or revoke a security clearance when the security of the nation so requires. Such authority may not be delegated and may be exercised only when the Secretary of Defense or the head of another Department or Agency determines that the hearing procedures and other provisions of this Directive cannot be invoked consistent with the national security. Such a determination shall be conclusive.

6.6. Additional procedural guidance is in enclosure 3.

*DoDD 5220.6, January 2, 1992*

7. <u>EFFECTIVE DATE</u>

This Directive is effective March 16, 1992, except those cases in which a statement of reasons has been issued shall be concluded in accordance with DoD Directive 5220.6 (reference (a)).

*Donald J. Atwood*

**Donald J. Atwood**
**Deputy Secretary of Defense**

Enclosures -3
- E1. Executive Order 10865, "Safeguarding Classified Information Within Industry," as amended by Executive Order No. 10909 of January 17, 1961, Executive Order No. 11382 of November 28, 1967, and Executive Order No. 12829 of January 6, 1993"
- E2. Paragraph 2-200 and Appendix I, DoD 5200.2-R
- E3. Additional Procedural Guidance

*DoDD 5220.6, January 2, 1992*

### E1.  ENCLOSURE 1

### EXECUTIVE ORDER 10865*
### SAFEGUARDING CLASSIFIED INFORMATION WITHIN INDUSTRY

Source:  The provisions of Executive Order 10865 of Feb. 20, 1960, appear at 25 FR 1583, 3 CFR 1959-1963 Comp., p. 398, unless otherwise noted.

WHEREAS it is mandatory that the United States protect itself against hostile or destructive activities by preventing unauthorized disclosure of classified information relating to the national defense; and

WHEREAS it is a fundamental principle of our Government to protect the interests of individuals against unreasonable or unwarranted encroachment; and

WHEREAS I find that the provisions and procedures prescribed by this order are necessary to assure the preservation of the integrity of classified defense information and to protect the national interest; and

WHEREAS I find that those provisions and procedures recognize the interests of individuals affected thereby and provide maximum possible safeguards to protect such interest:

NOW, THEREFORE, under and by virtue of the authority vested in me by the Constitution and statutes of the United States, and as President of the United States and as Commander in Chief of the Armed Forces of the United States, it is hereby ordered as follows:

*Executive Order 10865, signed by President Eisenhower on Feb. 20, 1960, is hereby reprinted as amended by Executive Order No. 10909 of January 17, 1961, Executive Order No. 11382 of November 28, 1967, and Executive Order No. 12829 of January 6, 1993.  This is an editorial format prepared by the Directorate for Industrial Security Clearance Review as one convenient source for subsequent changes to Executive Order 10865 and is not intended to be used as a definitive legal authority.  This version incorporates amendments through January 6, 1993, by Presidents Dwight D. Eisenhower, Lyndon B.  Johnson and George Bush.

*DoDD 5220.6, January 2, 1992*

SECTION 1.  When used in this order, the term "head of a Department" means the Secretary of State, the Secretary of Defense, the Secretary of Transportation, the Secretary of Energy, the Nuclear Regulatory Commission, the Administrator of the National Aeronautics and Space Administration and, in section 4, the Attorney General.  The term "head of a Department" also means the head of any Department or Agency, including but not limited to those referenced above with whom the Department of Defense makes an agreement to extend regulations prescribed by the Secretary of Defense concerning authorizations for access to classified information pursuant to Executive Order No. 12829.

[Sec. 1 amended by EO 10909 of Jan 17, 1961, 26 FR 508, 3 CFR, 1959-1963 Comp., p. 437; EO 11382 of Nov. 28, 1967, 32 FR 16247, 3 CFR, 1966-1970 Comp., p. 691; EO 12829 of Jan. 6, 1993, 58 FR 3479]

SECTION 2.  An authorization for access to classified information pursuant to Executive Order No. 12829 may be granted by the head of a Department or his designee, including, but not limited to, those officials named in section 8 of this order, to an individual, hereinafter termed an "applicant", for a specific classification category only upon a finding that it is clearly consistent with the national interest to do so.

[Sec. 2 amended by EO 12829 of Jan 6, 1993, 58 F4 3479]

SECTION 3.  Except as provided in section 9 of this order, an authorization for access to a specific classification category may not be finally denied or revoked pursuant to Executive Order 12829 by the head of a Department or his designee, including, but not limited to, those officials named in section 8 of this order, unless the applicant has been given the following:

(1) A written statement of reasons why his access authorization may be denied or revoked, which shall be as comprehensive and detailed as the national security permits.

(2) A reasonable opportunity to reply in writing under oath or affirmation to the statement of reasons.

(3) After he has filed under oath or affirmation a written reply to the statement of reasons, the form and sufficiency of which may be prescribed by regulations issued by the head of the Department concerned, an opportunity to appear personally before the head of the Department concerned or his designee, including, but not limited to, those

*DoDD 5220.6, January 2, 1992*

officials named in section 8 of this order, for the purpose of supporting his eligibility for access authorization and to present evidence on his behalf.

(4) A reasonable time to prepare for that appearance.

(5) An opportunity to be represented by counsel.

(6) An opportunity to cross-examine persons either orally or through written interrogatories in accordance with section 4 on matters not relating to the characterization in the statement of reasons of any organization or individual other than the applicant.

(7) A written notice of the final decision in his case which, if adverse, shall specify whether the head of the Department or his designee, including, but not limited to, those officials named in section 8 of this order, found for or against him with respect to each allegation in the statement of reasons.

[Sec. 3 amended by EO 12829 of Jan 6, 1993, 58 FR 3479]

SECTION 4.  (a) An applicant shall be afforded an opportunity to cross-examine persons who have made oral or written statements adverse to the applicant relating to a controverted issue except that any such statement may be received and considered without affording such opportunity in the circumstances described in either of the following paragraphs:

(1) The head of the Department supplying the statement certifies that the person who furnished the information is a confidential informant who has been engaged in obtaining intelligence information for the Government and that disclosure of his identity would be substantially harmful to the national interest.

(2) The head of the Department concerned or his special designee for that particular purpose has preliminarily determined, after considering information furnished by the investigative agency involved as to the reliability of the person and the accuracy of the statement concerned, that the statement concerned appears to be reliable and material, and the head of the Department or such special designee has determined that failure to receive and consider such statement would, in view of the level of access sought, be substantially harmful to the national security and that the person who furnished the information cannot appear to testify (A) due to death, severe illness, or similar cause, in which case the identity of the person and the information to

be considered shall be made available to the applicant, or (B) due to some other cause determined by the head of the Department to be good and sufficient.

(b) Whenever procedures under paragraph (1) or (2) of subsection (a) of this section are used (1) the applicant shall be given a summary of the information which shall be as comprehensive and detailed as the national security permits, (2) appropriate consideration shall be accorded to the fact that the applicant did not have an opportunity to cross-examine such person or persons, and (3) a final determination adverse to the applicant shall be made only by the head of the Department based upon his personal review of the case.

SECTION 5.  (a) Records compiled in the regular course of business, or other physical evidence other than investigative reports, may be received and considered subject to rebuttal without authenticating witnesses, provided that such information has been furnished to the Department concerned by an investigative agency pursuant to its responsibilities in connection with assisting the head of the Department concerned to safeguard classified information within industry pursuant to this order.

(b) Records compiled in the regular course of business, or other physical evidence other than investigative reports, relating to a controverted issue which, because they are classified, may not be inspected by the applicant, may be received and considered provided that:  (1) the head of the Department concerned or his special designee for that purpose has made a preliminary determination that such physical evidence appears to be material, (2) the head of the Department concerned or such designee has made a determination that failure to receive and consider such physical evidence would, in view of the level of access sought, be substantially harmful to the national security, and (3) to the extent that the national security permits, a summary or description of such physical evidence is made available to the applicant.  In every such case, information as to the authenticity and accuracy of such physical evidence furnished by the investigative agency involved shall be considered.  In such instances a final determination adverse to the applicant shall be made only by the head of the Department based upon his personal review of the case.

SECTION 6.  The head of a Department of the United States or his representative, may issue, in appropriate cases, invitations and requests to appear and testify in order that the applicant may have the opportunity to cross-examine as provided by this order.  Whenever a witness is so invited or requested to appear and testify at a proceeding and the witness is an officer or employee of the Executive Branch of the Government or a member of the Armed Forces of the United States, and the proceeding involves the activity in connection with which the witness is employed,

*DoDD 5220.6, January 2, 1992*

travel expenses and per diem are authorized as provided by the Standard Government Travel Regulations or the Joint Travel Regulations, as appropriate. In all other cases (including non-Government employees as well as officers or employees of the Executive Branch of the Government or members of the Armed Forces of the United states not covered by the foregoing sentence), transportation in kind and reimbursement for actual expenses are authorized in an amount not to exceed the amount payable under Standardized Government Travel Regulations. An Officer or employee of the Executive Branch of the Government or a member of the Armed Forces of the United States who is invited or requested to appear pursuant to this paragraph shall be deemed to be in the performance of his official duties. So far as the national security permits, the head of the investigative agency involved shall cooperate with the Secretary, the Administrator, or the head of the other Department or Agency, as the case may be, in identifying persons who have made statements adverse to the applicant and in assisting him in making them available for cross-examination. If a person so invited is an officer or employee of the Executive Branch of the Government or a member of the Armed Forces of the United States, the head of the Department or Agency concerned shall cooperate in making that person available for cross-examination.

[Sec. 6 amended by EO 10909 of Jan. 17, 1961, 26 FR 508, 3 CFR, 1959-1963 Comp., p. 437; EO 11382 of Nov. 28, 1967, 32 FR 16247, 3 CFR, 1966-1970 Comp., p. 691; EO 12829 of Jan. 6, 1993, 58 FR 3479]

SECTION 7. Any determination under this order adverse to an applicant shall be a determination in terms of the national interest and shall in no sense be a determination as to the loyalty of the applicant concerned.

SECTION 8. Except as otherwise specified in the preceding provisions of this order, any authority vested in the head of a Department by this order may be delegated to the deputy of that Department, or the principal assistant to the head of that Department, as the case may be.

[Sec. 8 amended by EO 10909 of Jan 17, 1961, 26 FR 508, 3 CFR, 1959-1963 Comp., p. 437; EO 11382 of Nov. 28, 1967, 32 FR 16247, 3 CFR, 1966-1970 Comp., p. 691; EO 12829 of Jan. 6, 1993, 58 FR 3479]

SECTION 9. Nothing contained in this order shall be deemed to limit or affect the responsibility and powers of the head of a Department to deny or revoke access to a specific classification category if the security of the nation so requires. Such authority may not be delegated and may be exercised only when the head of a

*DoDD 5220.6, January 2, 1992*

Department determines that the procedures prescribed in sections 3, 4, and 5 cannot be invoked consistently with the national security and such determination shall be conclusive.

# SECURITY EXECUTIVE AGENT
# DIRECTIVE 4
## NATIONAL SECURITY ADJUDICATIVE GUIDELINES
(EFFECTIVE: 08 JUNE 2017)

**A. AUTHORITY:** The National Security Act of 1947, as amended; Intelligence Reform and Terrorism Prevention Act of 2004 (IRTPA), as amended; Executive Order (EO) 10450, Security Requirements for Government Employment, as amended; EO 12968, Access to Classified Information, as amended; EO 13467, Reforming Processes Related to Suitability for Government Employment, Fitness for Contractor Employees, and Eligibility for Access to Classified National Security Information; EO 13549, Classified National Security Information Program for State, Local, Tribal and Private Sector Entities; Performance Accountability Council memorandum, Assignment of Functions Relating to Coverage of Contractor Employee Fitness in the Federal Investigative Standards, 6 December 2012; and other applicable provisions of law.

**B. PURPOSE:** This Security Executive Agent (SecEA) Directive establishes the single, common adjudicative criteria for all covered individuals who require initial or continued eligibility for access to classified information or eligibility to hold a sensitive position. The Guidelines reflected herein supersede all previously issued national security adjudicative criteria or guidelines.

**C. APPLICABILITY:** This Directive applies to any executive branch agency authorized or designated to conduct adjudications of covered individuals to determine eligibility for initial or continued access to classified national security information or eligibility to hold a sensitive position.

**D. DEFINITIONS:** As used in this Directive, the following terms have the meanings set forth below:

1. "Agency": Any "Executive agency" as defined in Section 105 of Title 5, United States Code (USC), including the "military departments," as defined in Section 102 of Title 5, USC and any other entity within the Executive Branch that comes into possession of classified information or has positions designated as sensitive.

2. "Authorized adjudicative agency": An agency authorized by law, executive order, or designation by the SecEA to determine eligibility for access to classified information in accordance with EO 12968, as amended, or eligibility to hold a sensitive position.

3. "Authorized investigative agency": An agency authorized by law, executive order, or designation by the SecEA to conduct a background investigation of individuals who are proposed for access to classified information or eligibility to hold a sensitive position or to ascertain whether such individuals continue to satisfy the criteria for retaining access to such information or eligibility to hold such positions.

4. "Classified national security information" or "classified information": Information that

has been determined pursuant to EO 13526 or any predecessor or successor order, or the Atomic Energy Act of 1954, as amended, to require protection against unauthorized disclosure.

5. "Covered individual":

a. A person who performs work for or on behalf of the executive branch or who seeks to perform work for or on behalf of the executive branch, but does not include the President or (except to the extent otherwise directed by the President) employees of the President under 3 USC 105 or 107, the Vice President, or (except to the extent otherwise directed by the Vice President) employees of the Vice President under 3 USC 106 or annual legislative branch appropriations acts;

b. A person who performs work for or on behalf of a state, local, tribal, or private sector entity as defined in EO 13549 requiring eligibility for access to classified information;

c. A person working in or for the legislative or judicial branches requiring eligibility for access to classified information and the investigation or determination is conducted by the executive branch, but does not include members of Congress; Justices of the Supreme Court; and Federal judges appointed by the President.

d. Covered individuals are not limited to government employees and include all persons, not excluded under paragraphs (a), (b), or (c) of this definition, who require eligibility for access to classified information or eligibility to hold a sensitive position, including, but not limited to, contractors, subcontractors, licensees, certificate holders, grantees, experts, consultants, and government employees.

6. "Foreign Intelligence Entity": Known or suspected foreign state or non-state organizations or persons that conduct intelligence activities to acquire U.S. information, block or impair U.S. intelligence collection, influence U.S. policy, or disrupt U.S. systems and programs. The term includes foreign intelligence and security services and international terrorists.

7. "National Security Eligibility": Eligibility for access to classified information or eligibility to hold a sensitive position, to include access to sensitive compartmented information, restricted data, and controlled or special access program information.

8. "Sensitive Position": Any position within or in support of an agency in which the occupant could bring about, by virtue of the nature of the position, a material adverse effect on the national security regardless of whether the occupant has access to classified information, and regardless of whether the occupant is an employee, military service member, or contractor.

## E. POLICY:

1. The National Security Adjudicative Guidelines in Appendix A shall be used by all authorized adjudicative agencies when rendering a determination for initial or continued eligibility for access to classified information or initial or continued eligibility to hold a sensitive position.

2. Appendix B sets forth statutory restrictions on agencies making certain eligibility determinations for access to classified information, as well as waiver and congressional reporting requirements. These amendments to the IRTPA are commonly referred to as the Bond Amendment. By definition, the risk to national security is equivalent for covered individuals with access to classified information and covered individuals occupying a sensitive position. Occupants of sensitive positions could bring about, by virtue of the nature of the position, a material adverse effect on the national security regardless of whether the occupant has access to classified information. Due to the equivalent adverse effect on the national security and to ensure uniformity, consistency, and reciprocity of national security background investigations and adjudications, the statutory restrictions imposed by the Bond Amendment are extended to apply to all covered individuals who require initial or continued eligibility for access to classified information or eligibility to hold a sensitive position. Authorized adjudicative agencies shall maintain a record of the number and type of meritorious waivers granted under Bond Amendment criteria, to include the rationale for each waiver, and shall report this data annually to the SecEA in advance of the annual report to Congress. Authorized adjudicative agencies will also maintain a record of all disqualifications due to Bond Amendment criteria.

3. Exceptions, as provided for in Appendix C, shall be used when a favorable adjudicative decision to grant initial or continued eligibility for access to classified information or to hold a sensitive position is made, despite failure to meet adjudicative or investigative standards.

4. Eligibility shall be determined by appropriately trained adjudicative personnel through the evaluation of all information bearing on an individual's loyalty and allegiance to the United States, including any information relevant to strength of character, honesty, discretion, sound judgment, reliability, ability to protect classified or sensitive information, and trustworthiness. Eligibility for access to classified information or eligibility to occupy a sensitive position shall only be granted when the evaluation of all such information demonstrates that such eligibility is clearly consistent with the interests of the United States; any doubt shall be resolved in favor of the national security.

5. All adjudicative determinations, including any associated exceptions, shall be recorded in either Scattered Castles, the Joint Personnel Adjudication System within the Department of Defense, or the Central Verification System database within U.S. Office of Personnel Management or successor databases, unless authorized by the SecEA to withhold information from the database for national security purposes.

6. When an adjudicative determination is made to deny or revoke eligibility for access to classified information or eligibility to hold a sensitive position, review proceedings, to the extent they are made available in EO 12968, as amended, Part 5, shall be afforded covered individuals at a minimum.

7. The agency with adjudicative authority remains responsible for the final determination.

8. Agencies shall update internal policies and replace existing national security adjudicative criteria or guidelines with the guidelines in Appendix A no later than the effective date of this

9. This Directive is not intended to, and does not, create any right to administrative or judicial review, or any other right or benefit, or trust responsibility substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person.

**F. EFFECTIVE DATE:** This Directive becomes effective 180 days after the date of signature.

James R. Clapper
_____
Security Executive Agent

10 Dec 2016
_____
Date

# APPENDIX A
## NATIONAL SECURITY ADJUDICATIVE GUIDELINES
## FOR DETERMINING ELIGIBILITY FOR ACCESS TO CLASSIFIED INFORMATION OR ELIGIBILITY TO HOLD A SENSITIVE POSITION

### 1. Introduction.

(a) The following National Security Adjudicative Guidelines ("guidelines") are established as the single common criteria for all U.S. Government civilian and military personnel, consultants, contractors, licensees, certificate holders or grantees and their employees, and other individuals who require initial or continued eligibility for access to classified information or eligibility to hold a sensitive position, to include access to sensitive compartmented information, restricted data, and controlled or special access program information (hereafter referred to as "national security eligibility"). These guidelines shall be used by all Executive Branch Agencies when rendering any final national security eligibility determination.

(b) National security eligibility determinations take into account a person's stability, trustworthiness, reliability, discretion, character, honesty, and judgment. Individuals must be unquestionably loyal to the United States. No amount of oversight or security procedures can replace the self-discipline and integrity of an individual entrusted to protect the nation's secrets or occupying a sensitive position. When a person's life history shows evidence of unreliability or untrustworthiness, questions arise as to whether the individual can be relied upon and trusted to exercise the responsibility necessary for working in an environment where protecting the national security is paramount.

(c) The U.S. Government does not discriminate on the basis of race, color, religion, sex, national origin, disability, or sexual orientation in making a national security eligibility determination. No negative inference concerning eligibility under these guidelines may be raised solely on the basis of mental health counseling. No adverse action concerning these guidelines may be taken solely on the basis of polygraph examination technical calls in the absence of adjudicatively significant information.

(d) In accordance with EO 12968, as amended, eligibility for covered individuals shall be granted only when facts and circumstances indicate that eligibility is clearly consistent with the national security interests of the United States, and any doubt shall be resolved in favor of national security.

### 2. The Adjudicative Process.

(a) The adjudicative process is an examination of a sufficient period and a careful weighing of a number of variables of an individual's life to make an affirmative determination that the individual is an acceptable security risk. This is known as the whole-person concept. All available, reliable information about the person, past and present, favorable and unfavorable, should be considered in reaching a national security eligibility determination.

(b) Each case must be judged on its own merits, and the final determination remains the responsibility of the authorized adjudicative agency. Any doubt concerning personnel being considered for national security eligibility will be resolved in favor of the national security.

(c) The ultimate determination of whether the granting or continuing of national security eligibility is clearly consistent with the interests of national security must be an overall common sense judgment based upon careful consideration of the following guidelines, each of which is to be evaluated in the context of the whole person.

> (1) GUIDELINE A: Allegiance to the United States
> (2) GUIDELINE B: Foreign Influence
> (3) GUIDELINE C: Foreign Preference
> (4) GUIDELINE D: Sexual Behavior
> (5) GUIDELINE E: Personal Conduct
> (6) GUIDELINE F: Financial Considerations
> (7) GUIDELINE G: Alcohol Consumption
> (8) GUIDELINE H: Drug Involvement and Substance Misuse
> (9) GUIDELINE I: Psychological Conditions
> (10) GUIDELINE J: Criminal Conduct
> (11) GUIDELINE K: Handling Protected Information
> (12) GUIDELINE L: Outside Activities
> (13) GUIDELINE M: Use of Information Technology

(d) In evaluating the relevance of an individual's conduct, the adjudicator should consider the following factors:

> (1) the nature, extent, and seriousness of the conduct;
> (2) the circumstances surrounding the conduct, to include knowledgeable participation;
> (3) the frequency and recency of the conduct;
> (4) the individual's age and maturity at the time of the conduct;
> (5) the extent to which participation is voluntary;
> (6) the presence or absence of rehabilitation and other permanent behavioral changes;
> (7) the motivation for the conduct;
> (8) the potential for pressure, coercion, exploitation, or duress; and
> (9) the likelihood of continuation or recurrence.

(e) Although adverse information concerning a single criterion may not be sufficient for an unfavorable eligibility determination, the individual may be found ineligible if available information reflects a recent or recurring pattern of questionable judgment, irresponsibility, or unstable behavior. However, a single criterion may be sufficient to make an unfavorable eligibility determination even in the absence of a recent occurrence or a recurring pattern. Notwithstanding the whole-person concept, pursuit of further investigation may be terminated by an appropriate adjudicative agency in the face of reliable, significant, disqualifying, adverse information.

(f) When information of security concern becomes known about an individual who is currently eligible for access to classified information or eligible to hold a sensitive position, the adjudicator should consider whether the individual:

      (1) voluntarily reported the information;

      (2) was truthful and complete in responding to questions;

      (3) sought assistance and followed professional guidance, where appropriate;

      (4) resolved or appears likely to favorably resolve the security concern;

      (5) has demonstrated positive changes in behavior; and

      (6) should have his or her national security eligibility suspended pending final adjudication of the information.

(g) If after evaluating information of security concern, the adjudicator decides the information is serious enough to warrant a recommendation of denial or revocation of the national security eligibility, but the specific risk to national security can be managed with appropriate mitigation measures, an adjudicator may recommend approval to grant initial or continued eligibility for access to classified information or to hold a sensitive position with an exception as defined in Appendix C.

(h) If after evaluating information of security concern, the adjudicator decides that the information is not serious enough to warrant a recommendation of denial or revocation of the national security eligibility, an adjudicator may recommend approval with a warning that future incidents of a similar nature or other incidents of adjudicative concern may result in revocation of national security eligibility.

(i) It must be noted that the adjudicative process is predicated upon individuals providing relevant information pertaining to their background and character for use in investigating and adjudicating their national security eligibility. Any incident of intentional material falsification or purposeful non-cooperation with security processing is of significant concern. Such conduct raises questions about an individual's judgment, reliability, and trustworthiness and may be predictive of their willingness or ability to protect the national security.

# GUIDELINES

## GUIDELINE A: ALLEGIANCE TO THE UNITED STATES

3. *The Concern.* The willingness to safeguard classified or sensitive information is in doubt if there is any reason to suspect an individual's allegiance to the United States. There is no positive test for allegiance, but there are negative indicators. These include participation in or support for acts against the United States or placing the welfare or interests of another country above those of the United States. Finally, the failure to adhere to the laws of the United States may be relevant if the violation of law is harmful to stated U.S. interests. An individual who engages in acts against the United States or provides support or encouragement to those who do has already demonstrated willingness to compromise national security.

4. *Conditions that could raise a security concern and may be disqualifying include:*

> (a) involvement in, support of, training to commit, or advocacy of any act of sabotage, espionage, treason, terrorism, or sedition against the United States;

> (b) association or sympathy with persons who are attempting to commit, or who are committing, any of the above acts; and

> (c) association or sympathy with persons or organizations that advocate, threaten, or use force or violence, or use any other illegal or unconstitutional means, in an effort to:

>> (1) overthrow or influence the U.S. Government or any state or local government;
>> (2) prevent Federal, state, or local government personnel from performing their official duties;
>> (3) gain retribution for perceived wrongs caused by the Federal, state, or local government; and
>> (4) prevent others from exercising their rights under the Constitution or laws of the United States or of any state.

5. *Conditions that could mitigate security concerns include:*

> (a) the individual was unaware of the unlawful aims of the individual or organization and severed ties upon learning of these;

> (b) the individual's involvement was humanitarian and permitted under U.S. law;

> (c) involvement in the above activities occurred for only a short period of time and was attributable to curiosity or academic interest; and

> (d) the involvement or association with such activities occurred under such unusual circumstances, or so much time has elapsed, that it is unlikely to recur and does not cast doubt on the individual's current reliability, trustworthiness, or allegiance.

## GUIDELINE B: FOREIGN INFLUENCE

6. *The Concern.* Foreign contacts and interests, including, but not limited to, business, financial, and property interests, are a national security concern if they result in divided allegiance. They may also be a national security concern if they create circumstances in which the individual may be manipulated or induced to help a foreign person, group, organization, or government in a way inconsistent with U.S. interests or otherwise made vulnerable to pressure or coercion by any foreign interest. Assessment of foreign contacts and interests should consider the country in which the foreign contact or interest is located, including, but not limited to, considerations such as whether it is known to target U.S. citizens to obtain classified or sensitive information or is associated with a risk of terrorism.

7. *Conditions that could raise a security concern and may be disqualifying include:*

   (a) contact, regardless of method, with a foreign family member, business or professional associate, friend, or other person who is a citizen of or resident in a foreign country if that contact creates a heightened risk of foreign exploitation, inducement, manipulation, pressure, or coercion;

   (b) connections to a foreign person, group, government, or country that create a potential conflict of interest between the individual's obligation to protect classified or sensitive information or technology and the individual's desire to help a foreign person, group, or country by providing that information or technology;

   (c) failure to report or fully disclose, when required, association with a foreign person, group, government, or country;

   (d) counterintelligence information, whether classified or unclassified, that indicates the individual's access to classified information or eligibility for a sensitive position may involve unacceptable risk to national security;

   (e) shared living quarters with a person or persons, regardless of citizenship status, if that relationship creates a heightened risk of foreign inducement, manipulation, pressure, or coercion;

   (f) substantial business, financial, or property interests in a foreign country, or in any foreign owned or foreign-operated business that could subject the individual to a heightened risk of foreign influence or exploitation or personal conflict of interest;

   (g) unauthorized association with a suspected or known agent, associate, or employee of a foreign intelligence entity;

   (h) indications that representatives or nationals from a foreign country are acting to increase the vulnerability of the individual to possible future exploitation, inducement, manipulation, pressure, or coercion; and

(i) conduct, especially while traveling or residing outside the U.S., that may make the individual vulnerable to exploitation, pressure, or coercion by a foreign person, group, government, or country.

8. *Conditions that could mitigate security concerns include:*

(a) the nature of the relationships with foreign persons, the country in which these persons are located, or the positions or activities of those persons in that country are such that it is unlikely the individual will be placed in a position of having to choose between the interests of a foreign individual, group, organization, or government and the interests of the United States;

(b) there is no conflict of interest, either because the individual's sense of loyalty or obligation to the foreign person, or allegiance to the group, government, or country is so minimal, or the individual has such deep and longstanding relationships and loyalties in the United States, that the individual can be expected to resolve any conflict of interest in favor of the U.S. interest;

(c) contact or communication with foreign citizens is so casual and infrequent that there is little likelihood that it could create a risk for foreign influence or exploitation;

(d) the foreign contacts and activities are on U.S. Government business or are approved by the agency head or designee;

(e) the individual has promptly complied with existing agency requirements regarding the reporting of contacts, requests, or threats from persons, groups, or organizations from a foreign country; and

(f) the value or routine nature of the foreign business, financial, or property interests is such that they are unlikely to result in a conflict and could not be used effectively to influence, manipulate, or pressure the individual.

## GUIDELINE C: FOREIGN PREFERENCE

9. *The Concern.* When an individual acts in such a way as to indicate a preference for a foreign country over the United States, then he or she may provide information or make decisions that are harmful to the interests of the United States. Foreign involvement raises concerns about an individual's judgment, reliability, and trustworthiness when it is in conflict with U.S. national interests or when the individual acts to conceal it. *By itself,* the fact that a U.S. citizen is also a citizen of another country is not disqualifying without an objective showing of such conflict or attempt at concealment. The same is true for a U.S. citizen's exercise of any right or privilege of foreign citizenship and any action to acquire or obtain recognition of a foreign citizenship.

10. *Conditions that could raise a security concern and may be disqualifying include:*

(a) applying for and/or acquiring citizenship in any other country;

(b) failure to report, or fully disclose when required, to an appropriate security official, the possession of a passport or identity card issued by any country other than the United States;

(c) failure to use a U.S. passport when entering or exiting the U.S.;

(d) participation in foreign activities, including but not limited to:

(1) assuming or attempting to assume any type of employment, position, or political office in a foreign government or military organization; and

(2) otherwise acting to serve the interests of a foreign person, group, organization, or government in any way that conflicts with U.S. national security interests;

(e) using foreign citizenship to protect financial or business interests in another country in violation of U.S. law; and

(f) an act of expatriation from the United States such as declaration of intent to renounce U.S. citizenship, whether through words or actions.

11. *Conditions that could mitigate security concerns include:*

(a) the foreign citizenship is not in conflict with U.S. national security interests;

(b) dual citizenship is based solely on parental citizenship or birth in a foreign country, and there is no evidence of foreign preference;

(c) the individual has expressed a willingness to renounce the foreign citizenship that is in conflict with U.S. national security interests;

(d) the exercise of the rights, privileges, or obligations of foreign citizenship occurred before the individual became a U.S. citizen;

(e) the exercise of the entitlements or benefits of foreign citizenship do not present a national security concern;

(f) the foreign preference, if detected, involves a foreign country, entity, or association that poses a low national security risk;

(g) civil employment or military service was authorized under U.S. law, or the employment or service was otherwise consented to as required by U.S. law; and

(h) any potentially disqualifying activity took place after receiving the approval by the agency head or designee.

## GUIDELINE D: SEXUAL BEHAVIOR

12. *The Concern.* Sexual behavior that involves a criminal offense; reflects a lack of judgment or discretion; or may subject the individual to undue influence of coercion, exploitation, or duress. These issues, together or individually, may raise questions about an individual's judgment, reliability, trustworthiness, and ability to protect classified or sensitive information. Sexual behavior includes conduct occurring in person or via audio, visual, electronic, or written transmission. No adverse inference concerning the standards in this Guideline may be raised solely on the basis of the sexual orientation of the individual.

13. *Conditions that could raise a security concern and may be disqualifying include:*

    (a) sexual behavior of a criminal nature, whether or not the individual has been prosecuted;

    (b) pattern of compulsive, self-destructive, or high-risk sexual behavior that the individual is unable to stop;

    (c) sexual behavior that causes an individual to be vulnerable to coercion, exploitation, or duress; and

    (d) sexual behavior of a public nature or that reflects lack of discretion or judgment.

14. *Conditions that could mitigate security concerns include:*

    (a) the behavior occurred prior to or during adolescence and there is no evidence of subsequent conduct of a similar nature;

    (b) the sexual behavior happened so long ago, so infrequently, or under such unusual circumstances, that it is unlikely to recur and does not cast doubt on the individual's current reliability, trustworthiness, or judgment;

    (c) the behavior no longer serves as a basis for coercion, exploitation, or duress;

    (d) the sexual behavior is strictly private, consensual, and discreet; and

    (e) the individual has successfully completed an appropriate program of treatment, or is currently enrolled in one, has demonstrated ongoing and consistent compliance with the treatment plan, and/or has received a favorable prognosis from a qualified mental health professional indicating the behavior is readily controllable with treatment.

## GUIDELINE E: PERSONAL CONDUCT

15. *The Concern.* Conduct involving questionable judgment, lack of candor, dishonesty, or unwillingness to comply with rules and regulations can raise questions about an individual's reliability, trustworthiness, and ability to protect classified or sensitive information. Of special interest is any failure to cooperate or provide truthful and candid answers during national security investigative or adjudicative processes. The following will normally result in an unfavorable national security eligibility determination, security clearance action, or cancellation of further processing for national security eligibility:

(a) refusal, or failure without reasonable cause, to undergo or cooperate with security processing, including but not limited to meeting with a security investigator for subject interview, completing security forms or releases, cooperation with medical or psychological evaluation, or polygraph examination, if authorized and required; and

(b) refusal to provide full, frank, and truthful answers to lawful questions of investigators, security officials, or other official representatives in connection with a personnel security or trustworthiness determination.

16. *Conditions that could raise a security concern and may be disqualifying include:*

(a) deliberate omission, concealment, or falsification of relevant facts from any personnel security questionnaire, personal history statement, or similar form used to conduct investigations, determine employment qualifications, award benefits or status, determine national security eligibility or trustworthiness, or award fiduciary responsibilities;

(b) deliberately providing false or misleading information; or concealing or omitting information, concerning relevant facts to an employer, investigator, security official, competent medical or mental health professional involved in making a recommendation relevant to a national security eligibility determination, or other official government representative;

(c) credible adverse information in several adjudicative issue areas that is not sufficient for an adverse determination under any other single guideline, but which, when considered as a whole, supports a whole-person assessment of questionable judgment, untrustworthiness, unreliability, lack of candor, unwillingness to comply with rules and regulations, or other characteristics indicating that the individual may not properly safeguard classified or sensitive information;

(d) credible adverse information that is not explicitly covered under any other guideline and may not be sufficient by itself for an adverse determination, but which, when combined with all available information, supports a whole-person assessment of questionable judgment, untrustworthiness, unreliability, lack of candor, unwillingness to comply with rules and regulations, or other characteristics indicating that the individual may not properly safeguard classified or sensitive information. This includes, but is not limited to, consideration of:

(1) untrustworthy or unreliable behavior to include breach of client confidentiality, release of proprietary information, unauthorized release of sensitive corporate or government protected information;

(2) any disruptive, violent, or other inappropriate behavior;

(3) a pattern of dishonesty or rule violations; and

(4) evidence of significant misuse of Government or other employer's time or resources;

(e) personal conduct, or concealment of information about one's conduct, that creates a vulnerability to exploitation, manipulation, or duress by a foreign intelligence entity or other individual or group. Such conduct includes:

(1) engaging in activities which, if known, could affect the person's personal, professional, or community standing;

(2) while in another country, engaging in any activity that is illegal in that country;

(3) while in another country, engaging in any activity that, while legal there, is illegal in the United States;

(f) violation of a written or recorded commitment made by the individual to the employer as a condition of employment; and

(g) association with persons involved in criminal activity.

17. *Conditions that could mitigate security concerns include:*

(a) the individual made prompt, good-faith efforts to correct the omission, concealment, or falsification before being confronted with the facts;

(b) the refusal or failure to cooperate, omission, or concealment was caused or significantly contributed to by advice of legal counsel or of a person with professional responsibilities for advising or instructing the individual specifically concerning security processes. Upon being made aware of the requirement to cooperate or provide the information, the individual cooperated fully and truthfully;

(c) the offense is so minor, or so much time has passed, or the behavior is so infrequent, or it happened under such unique circumstances that it is unlikely to recur and does not cast doubt on the individual's reliability, trustworthiness, or good judgment;

(d) the individual has acknowledged the behavior and obtained counseling to change the

behavior or taken other positive steps to alleviate the stressors, circumstances, or factors that contributed to untrustworthy, unreliable, or other inappropriate behavior, and such behavior is unlikely to recur;

(e) the individual has taken positive steps to reduce or eliminate vulnerability to exploitation, manipulation, or duress;

(f) the information was unsubstantiated or from a source of questionable reliability; and

(g) association with persons involved in criminal activities was unwitting, has ceased, or occurs under circumstances that do not cast doubt upon the individual's reliability, trustworthiness, judgment, or willingness to comply with rules and regulations.

## GUIDELINE F: FINANCIAL CONSIDERATIONS

18. *The Concern.* Failure to live within one's means, satisfy debts, and meet financial obligations may indicate poor self-control, lack of judgment, or unwillingness to abide by rules and regulations, all of which can raise questions about an individual's reliability, trustworthiness, and ability to protect classified or sensitive information. Financial distress can also be caused or exacerbated by, and thus can be a possible indicator of, other issues of personnel security concern such as excessive gambling, mental health conditions, substance misuse, or alcohol abuse or dependence. An individual who is financially overextended is at greater risk of having to engage in illegal or otherwise questionable acts to generate funds. Affluence that cannot be explained by known sources of income is also a security concern insofar as it may result from criminal activity, including espionage.

19. *Conditions that could raise a security concern and may be disqualifying include:*

    (a) inability to satisfy debts;

    (b) unwillingness to satisfy debts regardless of the ability to do so;

    (c) a history of not meeting financial obligations;

    (d) deceptive or illegal financial practices such as embezzlement, employee theft, check fraud, expense account fraud, mortgage fraud, filing deceptive loan statements and other intentional financial breaches of trust;

    (e) consistent spending beyond one's means or frivolous or irresponsible spending, which may be indicated by excessive indebtedness, significant negative cash flow, a history of late payments or of non-payment, or other negative financial indicators;

    (f) failure to file or fraudulently filing annual Federal, state, or local income tax returns or failure to pay annual Federal, state, or local income tax as required;

    (g) unexplained affluence, as shown by a lifestyle or standard of living, increase in net worth, or money transfers that are inconsistent with known legal sources of income;

    (h) borrowing money or engaging in significant financial transactions to fund gambling or pay gambling debts; and

    (i) concealing gambling losses, family conflict, or other problems caused by gambling.

20. *Conditions that could mitigate security concerns include:*

    (a) the behavior happened so long ago, was so infrequent, or occurred under such circumstances that it is unlikely to recur and does not cast doubt on the individual's current reliability, trustworthiness, or good judgment;

(b) the conditions that resulted in the financial problem were largely beyond the person's control (e.g., loss of employment, a business downturn, unexpected medical emergency, a death, divorce or separation, clear victimization by predatory lending practices, or identity theft), and the individual acted responsibly under the circumstances;

(c) the individual has received or is receiving financial counseling for the problem from a legitimate and credible source, such as a non-profit credit counseling service, and there are clear indications that the problem is being resolved or is under control;

(d) the individual initiated and is adhering to a good-faith effort to repay overdue creditors or otherwise resolve debts;

(e) the individual has a reasonable basis to dispute the legitimacy of the past-due debt which is the cause of the problem and provides documented proof to substantiate the basis of the dispute or provides evidence of actions to resolve the issue;

(f) the affluence resulted from a legal source of income; and

(g) the individual has made arrangements with the appropriate tax authority to file or pay the amount owed and is in compliance with those arrangements.

## GUIDELINE G: ALCOHOL CONSUMPTION

21. *The Concern.* Excessive alcohol consumption often leads to the exercise of questionable judgment or the failure to control impulses, and can raise questions about an individual's reliability and trustworthiness.

22. *Conditions that could raise a security concern and may be disqualifying include:*

> (a) alcohol-related incidents away from work, such as driving while under the influence, fighting, child or spouse abuse, disturbing the peace, or other incidents of concern, regardless of the frequency of the individual's alcohol use or whether the individual has been diagnosed with alcohol use disorder;

> (b) alcohol-related incidents at work, such as reporting for work or duty in an intoxicated or impaired condition, drinking on the job, or jeopardizing the welfare and safety of others, regardless of whether the individual is diagnosed with alcohol use disorder;

> (c) habitual or binge consumption of alcohol to the point of impaired judgment, regardless of whether the individual is diagnosed with alcohol use disorder;

> (d) diagnosis by a duly qualified medical or mental health professional (e.g., physician, clinical psychologist, psychiatrist, or licensed clinical social worker) of alcohol use disorder;

> (e) the failure to follow treatment advice once diagnosed;

> (f) alcohol consumption, which is not in accordance with treatment recommendations, after a diagnosis of alcohol use disorder; and

> (g) failure to follow any court order regarding alcohol education, evaluation, treatment, or abstinence.

23. *Conditions that could mitigate security concerns include:*

> (a) so much time has passed, or the behavior was so infrequent, or it happened under such unusual circumstances that it is unlikely to recur or does not cast doubt on the individual's current reliability, trustworthiness, or judgment;

> (b) the individual acknowledges his or her pattern of maladaptive alcohol use, provides evidence of actions taken to overcome this problem, and has demonstrated a clear and established pattern of modified consumption or abstinence in accordance with treatment recommendations;

> (c) the individual is participating in counseling or a treatment program, has no previous history of treatment and relapse, and is making satisfactory progress in a treatment program; and

(d) the individual has successfully completed a treatment program along with any required aftercare, and has demonstrated a clear and established pattern of modified consumption or abstinence in accordance with treatment recommendations.

## GUIDELINE H: DRUG INVOLVEMENT[1] AND SUBSTANCE MISUSE

24. *The Concern.* The illegal use of controlled substances, to include the misuse of prescription and non-prescription drugs, and the use of other substances that cause physical or mental impairment or are used in a manner inconsistent with their intended purpose can raise questions about an individual's reliability and trustworthiness, both because such behavior may lead to physical or psychological impairment and because it raises questions about a person's ability or willingness to comply with laws, rules, and regulations. *Controlled substance* means any "controlled substance" as defined in 21 U.S.C. 802. *Substance misuse* is the generic term adopted in this guideline to describe any of the behaviors listed above.

25. *Conditions that could raise a security concern and may be disqualifying include:*

    (a) any substance misuse (see above definition);

    (b) testing positive for an illegal drug;

    (c) illegal possession of a controlled substance, including cultivation, processing, manufacture, purchase, sale, or distribution; or possession of drug paraphernalia;

    (d) diagnosis by a duly qualified medical or mental health professional (e.g., physician, clinical psychologist, psychiatrist, or licensed clinical social worker) of substance use disorder;

    (e) failure to successfully complete a drug treatment program prescribed by a duly qualified medical or mental health professional;

    (f) any illegal drug use while granted access to classified information or holding a sensitive position; and

    (g) expressed intent to continue drug involvement and substance misuse, or failure to clearly and convincingly commit to discontinue such misuse.

26. *Conditions that could mitigate security concerns include:*

    (a) the behavior happened so long ago, was so infrequent, or happened under such circumstances that it is unlikely to recur or does not cast doubt on the individual's current reliability, trustworthiness, or good judgment;

    (b) the individual acknowledges his or her drug involvement and substance misuse, provides evidence of actions taken to overcome this problem, and has established a pattern of abstinence, including, but not limited to:

        (1) disassociation from drug-using associates and contacts;

---

[1] Appendix B of this document regarding statutory requirements contained in Public Law 110-118 (Bond Amendment) applicable to this guideline.

(2) changing or avoiding the environment where drugs were used; and

(3) providing a signed statement of intent to abstain from all drug involvement and substance misuse, acknowledging that any future involvement or misuse is grounds for revocation of national security eligibility;

(c) abuse of prescription drugs was after a severe or prolonged illness during which these drugs were prescribed, and abuse has since ended; and

(d) satisfactory completion of a prescribed drug treatment program, including, but not limited to, rehabilitation and aftercare requirements, without recurrence of abuse, and a favorable prognosis by a duly qualified medical professional.

**GUIDELINE I: PSYCHOLOGICAL CONDITIONS[2]**

27. *The Concern.* Certain emotional, mental, and personality conditions can impair judgment, reliability, or trustworthiness. A formal diagnosis of a disorder is not required for there to be a concern under this guideline. A duly qualified mental health professional (e.g., clinical psychologist or psychiatrist) employed by, or acceptable to and approved by the U.S. Government, should be consulted when evaluating potentially disqualifying and mitigating information under this guideline and an opinion, including prognosis, should be sought. No negative inference concerning the standards in this guideline may be raised solely on the basis of mental health counseling.

28. *Conditions that could raise a security concern and may be disqualifying include:*

(a) behavior that casts doubt on an individual's judgment, stability, reliability, or trustworthiness, not covered under any other guideline and that may indicate an emotional, mental, or personality condition, including, but not limited to, irresponsible, violent, self-harm, suicidal, paranoid, manipulative, impulsive, chronic lying, deceitful, exploitative, or bizarre behaviors;

(b) an opinion by a duly qualified mental health professional that the individual has a condition that may impair judgment, stability, reliability, or trustworthiness;

(c) voluntary or involuntary inpatient hospitalization;

(d) failure to follow a prescribed treatment plan related to a diagnosed psychological/psychiatric condition that may impair judgment, stability, reliability, or trustworthiness, including, but not limited to, failure to take prescribed medication or failure to attend required counseling sessions; and

(e) pathological gambling, the associated behaviors of which may include unsuccessful attempts to stop gambling; gambling for increasingly higher stakes, usually in an attempt to cover losses; concealing gambling losses; borrowing or stealing money to fund gambling or pay gambling debts; and family conflict resulting from gambling.

29. *Conditions that could mitigate security concerns include:*

(a) the identified condition is readily controllable with treatment, and the individual has demonstrated ongoing and consistent compliance with the treatment plan;

(b) the individual has voluntarily entered a counseling or treatment program for a condition that is amenable to treatment, and the individual is currently receiving counseling or treatment with a favorable prognosis by a duly qualified mental health professional;

---

2  Appendix B of this document regarding statutory requirements contained in Public Law 110-118 (Bond Amendment) applicable to this guideline.

(c) recent opinion by a duly qualified mental health professional employed by, or acceptable to and approved by, the U.S. Government that an individual's previous condition is under control or in remission, and has a low probability of recurrence or exacerbation;

(d) the past psychological/psychiatric condition was temporary, the situation has been resolved, and the individual no longer shows indications of emotional instability;

(e) there is no indication of a current problem.

ENCLOSURE 2

## GUIDELINE J: CRIMINAL CONDUCT[3]

30. *The Concern.* Criminal activity creates doubt about a person's judgment, reliability, and trustworthiness. By its very nature, it calls into question a person's ability or willingness to comply with laws, rules, and regulations.

31. *Conditions that could raise a security concern and may be disqualifying include:*

> (a) a pattern of minor offenses, any one of which on its own would be unlikely to affect a national security eligibility decision, but which in combination cast doubt on the individual's judgment, reliability, or trustworthiness;

> (b) evidence (including, but not limited to, a credible allegation, an admission, and matters of official record) of criminal conduct, regardless of whether the individual was formally charged, prosecuted, or convicted;

> (c) individual is currently on parole or probation;

> (d) violation or revocation of parole or probation, or failure to complete a court-mandated rehabilitation program; and

> (e) discharge or dismissal from the Armed Forces for reasons less than "Honorable."

32. *Conditions that could mitigate security concerns include:*

> (a) so much time has elapsed since the criminal behavior happened, or it happened under such unusual circumstances, that it is unlikely to recur and does not cast doubt on the individual's reliability, trustworthiness, or good judgment;

> (b) the individual was pressured or coerced into committing the act and those pressures are no longer present in the person's life;

> (c) no reliable evidence to support that the individual committed the offense; and

> (d) there is evidence of successful rehabilitation; including, but not limited to, the passage of time without recurrence of criminal activity, restitution, compliance with the terms of parole or probation, job training or higher education, good employment record, or constructive community involvement.

---

[3] Appendix B of this document regarding statutory requirements contained in Public Law 110-118 (Bond Amendment) applicable to this guideline.

## GUIDELINE K: HANDLING PROTECTED INFORMATION

33. *The Concern.* Deliberate or negligent failure to comply with rules and regulations for handling protected information-which includes classified and other sensitive government information, and proprietary information-raises doubt about an individual's trustworthiness, judgment, reliability, or willingness and ability to safeguard such information, and is a serious security concern.

34. *Conditions that could raise a security concern and may be disqualifying include:*

(a) deliberate or negligent disclosure of protected information to unauthorized persons, including, but not limited to, personal or business contacts, the media, or persons present at seminars, meetings, or conferences;

(b) collecting or storing protected information in any unauthorized location;

(c) loading, drafting, editing, modifying, storing, transmitting, or otherwise handling protected information, including images, on any unauthorized equipment or medium;

(d) inappropriate efforts to obtain or view protected information outside one's need to know;

(e) copying or modifying protected information in an unauthorized manner designed to conceal or remove classification or other document control markings;

(f) viewing or downloading information from a secure system when the information is beyond the individual's need-to-know;

(g) any failure to comply with rules for the protection of classified or sensitive information;

(h) negligence or lax security practices that persist despite counseling by management; and

(i) failure to comply with rules or regulations that results in damage to the national security, regardless of whether it was deliberate or negligent.

35. *Conditions that could mitigate security concerns include:*

(a) so much time has elapsed since the behavior, or it has happened so infrequently or under such unusual circumstances, that it is unlikely to recur and does not cast doubt on the individual's current reliability, trustworthiness, or good judgment;

(b) the individual responded favorably to counseling or remedial security training and now demonstrates a positive attitude toward the discharge of security responsibilities;

(c) the security violations were due to improper or inadequate training or unclear instructions; and

(d) the violation was inadvertent, it was promptly reported, there is no evidence of compromise, and it does not suggest a pattern.

## GUIDELINE L: OUTSIDE ACTIVITIES

36. *The Concern.* Involvement in certain types of outside employment or activities is of security concern if it poses a conflict of interest with an individual's security responsibilities and could create an increased risk of unauthorized disclosure of classified or sensitive information.

37. *Conditions that could raise a security concern and may be disqualifying include:*

    (a) any employment or service, whether compensated or volunteer, with:

        (1) the government of a foreign country;

        (2) any foreign national, organization, or other entity;

        (3) a representative of any foreign interest; and

        (4) any foreign, domestic, or international organization or person engaged in analysis, discussion, or publication of material on intelligence, defense, foreign affairs, or protected technology; and

    (b) failure to report or fully disclose an outside activity when this is required.

38. *Conditions that could mitigate security concerns include:*

    (a) evaluation of the outside employment or activity by the appropriate security or counterintelligence office indicates that it does not pose a conflict with an individual's security responsibilities or with the national security interests of the United States; and

    (b) the individual terminated the employment or discontinued the activity upon being notified that it was in conflict with his or her security responsibilities.

## GUIDELINE M: USE OF INFORMATION TECHNOLOGY

39. *The Concern.* Failure to comply with rules, procedures, guidelines, or regulations pertaining to information technology systems may raise security concerns about an individual's reliability and trustworthiness, calling into question the willingness or ability to properly protect sensitive systems, networks, and information. Information Technology includes any computer-based, mobile, or wireless device used to create, store, access, process, manipulate, protect, or move information. This includes any component, whether integrated into a larger system or not, such as hardware, software, or firmware, used to enable or facilitate these operations.

40. *Conditions that could raise a security concern and may be disqualifying include:*

    (a) unauthorized entry into any information technology system;

    (b) unauthorized modification, destruction, or manipulation of, or denial of access to, an information technology system or any data in such a system;

    (c) use of any information technology system to gain unauthorized access to another system or to a compartmented area within the same system;

    (d) downloading, storing, or transmitting classified, sensitive, proprietary, or other protected information on or to any unauthorized information technology system;

    (e) unauthorized use of any information technology system;

    (f) introduction, removal, or duplication of hardware, firmware, software, or media to or from any information technology system when prohibited by rules, procedures, guidelines, or regulations or when otherwise not authorized;

    (g) negligence or lax security practices in handling information technology that persists despite counseling by management; and

    (h) any misuse of information technology, whether deliberate or negligent, that results in damage to the national security.

41. *Conditions that could mitigate security concerns include:*

    (a) so much time has elapsed since the behavior happened, or it happened under such unusual circumstances, that it is unlikely to recur and does not cast doubt on the individual's reliability, trustworthiness, or good judgment;

    (b) the misuse was minor and done solely in the interest of organizational efficiency and effectiveness;

(c) the conduct was unintentional or inadvertent and was followed by a prompt, good-faith effort to correct the situation and by notification to appropriate personnel; and

(d) the misuse was due to improper or inadequate training or unclear instructions.

# APPENDIX B
## BOND AMENDMENT GUIDANCE

On 28 January 2008, Congress amended the IRTPA of 2004, adding statutory restrictions on certain eligibility determinations and establishing waiver and congressional reporting requirements. These modifications are collectively referred to as the "Bond Amendments" and were made effective on 1 January 2008.[4]  For the reasons identified in paragraph E.2 above, application of the Bond Amendment's statutory restrictions will be applied to all adjudications covered under this Directive.

**1. PROHIBITION:** Heads of agencies are prohibited from granting or renewing national security eligibility for any covered individual who is an unlawful user of a controlled substance or is an addict as defined below. If an authorized adjudicative agency has a case pending review that involves an unlawful user of a controlled substance or an addict, the statutory prohibition must be applied and the individual will receive the agency's established administrative review procedures. A meritorious waiver may not be authorized with reference to this prohibition. For purposes of this prohibition:

(a) an "addict" is any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare; or is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction.

(b) a "controlled substance" means any "controlled substance" as defined in 21 USC 802.

**2. DISQUALIFICATION:** The Bond Amendment also contains disqualification provisions which apply only to those covered individuals seeking access to Sensitive Compartmented Information (SCI), Special Access Programs (SAP), or Restricted Data (RD). Heads of agencies may not grant or renew access to SCI, SAP, or RD to a covered individual who:

(a) has been convicted in any court of the U.S. of a crime, was sentenced to imprisonment for a term exceeding one year, and was incarcerated as a result of that sentence for not less than one year;

(b) has been discharged or dismissed from the Armed Forces under dishonorable conditions; or

(c) is determined to be mentally incompetent; an individual is "mentally incompetent" when he or she has been declared mentally incompetent as determined by competency proceedings conducted in a court or administrative agency with proper jurisdiction.

**3. WAIVER STANDARD AND PROCEDURES:** When a disqualifier reflected in paragraph 2(a) - (c) above exists, the adjudicator will proceed with the adjudication using the appropriate mitigation conditions found in these adjudicative guidelines. If the adjudicator would have arrived at a favorable decision but for the Bond Amendment disqualification, a meritorious waiver may be appropriate.

---

[4] IRTPA of 2004 § 3002, 50 USC § 3343.

(a) Meritorious waivers will be considered an "Exception" to the adjudicative guidelines and will be annotated as a "Waiver" in the adjudicative decision recorded in the appropriate databases listed in para. E.5. Adjudicators will provide a detailed justification for the meritorious waiver in the final adjudicative report.

(b) If, after applying the appropriate mitigating factors listed in these adjudicative guidelines, a meritorious waiver is not appropriate, the SCI, SAP, or RD access will be denied or revoked with a written explanation that cites the adjudicative guidelines applied and the Bond Amendment disqualifier. The authorized adjudicative agency's established administrative review procedures shall be followed in all such cases.

(c) Each authorized adjudicative agency shall maintain a record of the number and type of meritorious waivers granted, to include the rationale for each waiver, and shall report this data annually to the SecEA in advance of the annual report to Congress. Authorized adjudicative agencies will also maintain a record of all disqualifications, broken down by type, due to Bond Amendment requirements.

**4.** Authorized adjudicative agencies often have no ability to predict whether the covered individual for whom national security eligibility determinations are being made will also require access to SCI, SAP, or RD. Accordingly, the following guidance applies to all national security adjudicative determinations:

(a) All adjudicators will determine whether any of the Bond Amendment disqualifiers in paragraphs 2(a) - (c) apply to the case being adjudicated.

(b) If a disqualifier exists, adjudicators shall annotate that fact in one of the databases identified in paragraph E.5 to ensure that any subsequent requests for access to SCI, SAP, or RD for the individual will undergo appropriate re-adjudication and waiver procedures in meritorious cases.

## APPENDIX C
## EXCEPTIONS

Exceptions are an adjudicative decision to grant initial or continued eligibility for access to classified information or to hold a sensitive position despite failure to meet the full adjudicative or investigative standards. The authorized exceptions are defined below and supersede the definitions in Office of Management and Budget memorandum, *Reciprocal Recognition of Existing Personnel Security Clearances,* 14 November 2007.

Waiver (W):

  Eligibility granted or continued despite the presence of substantial issue information that would normally preclude eligibility. Approval authorities may approve a waiver only when the benefit of initial or continued eligibility clearly outweighs any security concerns. A waiver may also require conditions for eligibility as described below.

Condition (C):

  Eligibility granted or continued, despite the presence of issue information that can be partially but not completely mitigated, with the provision that additional security measures shall be required to mitigate the issue(s). Such measures include, but are not limited to, additional security monitoring, access restrictions, submission of periodic financial statements, or attendance at counseling sessions.

Deviation (D):

  Eligibility granted or continued despite either a significant gap in coverage or scope of the investigation. "Significant gap" for this purpose means either complete lack of coverage for a period of six months or longer within the most recent five years investigated or the lack of one or more relevant investigative scope components (e.g., employment checks, financial review, or a subject interview) in its entirety.

Out of Scope (0):

  Reinvestigation is overdue.

*DoDD 5220.6, January 2, 1992*

E3.  ENCLOSURE 3

ADDITIONAL PROCEDURAL GUIDANCE

E3.1.1.  When the DISCO cannot affirmatively find that it is clearly consistent with the national interest to grant or continue a security clearance for an applicant, the case shall be promptly referred to the DOHA.

E3.1.2.  Upon referral, the DOHA shall make a prompt determination whether to grant or continue a security clearance, issue a statement of reasons (SOR) as to why it is not clearly consistent with the national interest to do so, or take interim actions, including but not limited to:

E3.1.2.1.  Direct further investigation.

E3.1.2.2.  Propound written interrogatories to the applicant or other persons with relevant information.

E3.1.2.3.  Requiring the applicant to undergo a medical evaluation by a DoD Psychiatric Consultant.

E3.1.2.4.  Interviewing the applicant.

E3.1.3.  An unfavorable clearance decision shall not be made unless the applicant has been provided with a written SOR that shall be as detailed and comprehensive as the national security permits.  A letter of instruction with the SOR shall explain that the applicant or Department Counsel may request a hearing.  It shall also explain the adverse consequences for failure to respond to the SOR within the prescribed time frame.

E3.1.4.  The applicant must submit a detailed written answer to the SOR under oath or affirmation that shall admit or deny each listed allegation.  A general denial or other similar answer is insufficient.  To be entitled to a hearing, the applicant must specifically request a hearing in his or her answer.  The answer must be received by the DOHA within 20 days from receipt of the SOR.  Requests for an extension of time to file an answer may be submitted to the Director, DOHA, or designee, who in turn may grant the extension only upon a showing of good cause.

E3.1.5.  If the applicant does not file a timely and responsive answer to the SOR, the Director, DOHA, or designee, may discontinue processing the case, deny issuance

of the requested security clearance, and direct the DISCO to revoke any security clearance held by the applicant.

E3.1.6.  Should review of the applicant's answer to the SOR indicate that allegations are unfounded, or evidence is insufficient for further processing, Department Counsel shall take such action as appropriate under the circumstances, including but not limited to withdrawal of the SOR and transmittal to the Director for notification of the DISCO for appropriate action.

E3.1.7.  If the applicant has not requested a hearing with his or her answer to the SOR and Department Counsel has not requested a hearing within 20 days of receipt of the applicant's answer, the case shall be assigned to the Administrative Judge for a clearance decision based on the written record.  Department Counsel shall provide the applicant with a copy of all relevant and material information that could be adduced at a hearing.  The applicant shall have 30 days from receipt of the information in which to submit a documentary response setting forth objections, rebuttal, extenuation, mitigation, or explanation, as appropriate.

E3.1.8.  If a hearing is requested by the applicant or Department Counsel, the case shall be assigned to the Administrative Judge for a clearance decision based on the hearing record.  Following issuance of a notice of hearing by the Administrative Judge, or designee, the applicant shall appear in person with or without counsel or a personal representative at a time and place designated by the notice of hearing.  The applicant shall have a reasonable amount of time to prepare his or her case.  The applicant shall be notified at least 15 days in advance of the time and place of the hearing, which generally shall be held at a location in the United States within a metropolitan area near the applicant's place of employment or residence.  A continuance may be granted by the Administrative Judge only for good cause. Hearings may be held outside of the United States in NATO cases, or in other cases upon a finding of good cause by the Director, DOHA, or designee.

E3.1.9.  The Administrative Judge may require a pre-hearing conference.

E3.1.10.  The Administrative Judge may rule on questions on procedure, discovery, and evidence and shall conduct all proceedings in a fair, timely, and orderly manner.

E3.1.11.  Discovery by the applicant is limited to non-privileged documents and materials subject to control by the DOHA.  Discovery by Department Counsel after

*DoDD 5220.6, January 2, 1992*

issuance of an SOR may be granted by the Administrative Judge only upon a showing of good cause.

E3.1.12.  A hearing shall be open except when the applicant requests that it be closed, or when the Administrative Judge determines that there is a need to protect classified information or there is other good cause for keeping the proceeding closed. No inference shall be drawn as to the merits of a case on the basis of a request that the hearing be closed.

E3.1.13.  As far in advance as practical, Department Counsel and the applicant shall serve one another with a copy of any pleading, proposed documentary evidence, or other written communication to be submitted to the Administrative Judge.

E3.1.14.  Department Counsel is responsible for presenting witnesses and other evidence to establish facts alleged in the SOR that have been controverted.

E3.1.15.  The applicant is responsible for presenting witnesses and other evidence to rebut, explain, extenuate, or mitigate facts admitted by the applicant or proven by Department Counsel, and has the ultimate burden of persuasion as to obtaining a favorable clearance decision.

E3.1.16.  Witnesses shall be subject to cross-examination.

E3.1.17.  The SOR may be amended at the hearing by the Administrative Judge on his or her own motion, or upon motion by Department Counsel or the applicant, so as to render it in conformity with the evidence admitted or for other good cause.  When such amendments are made, the Administrative Judge may grant either party's request for such additional time as the Administrative Judge may deem appropriate for further preparation or other good cause.

E3.1.18.  The Administrative Judge hearing the case shall notify the applicant and all witnesses testifying that 18 U.S. C. 1001 (reference (c)) is applicable.

E3.1.19.  The Federal Rules of Evidence (28 U.S. C. 101 et  seq.  (reference (d)) shall serve as a guide.  Relevant and material evidence may be received subject to rebuttal, and technical rules of evidence may be relaxed, except as otherwise provided herein, to permit the development of a full and complete record.

E3.1.20.  Official records or evidence compiled or created in the regular course of business, other than DoD personnel background reports of investigation (ROI), may be received and considered by the Administrative Judge without authenticating witnesses,

provided that such information has been furnished by an investigative agency pursuant to its responsibilities in connection with assisting the Secretary of Defense, or the Department or Agency head concerned, to safeguard classified information within industry under E.O. 10865 (enclosure 1.). An ROI may be received with an authenticating witness provided it is otherwise admissible under the Federal Rules of Evidence (28 U.S. C. 101 et seq. (reference (d)).

E3.1.21. Records that cannot be inspected by the applicant because they are classified may be received and considered by the Administrative Judge, provided the GC, DoD, has:

E3.1.21.1. Made a preliminary determination that such evidence appears to be relevant and material.

E3.1.21.2. Determined that failure to receive and consider such evidence would be substantially harmful to the national security.

E3.1.22. A written or oral statement adverse to the applicant on a controverted issue may be received and considered by the Administrative Judge without affording an opportunity to cross-examine the person making the statement orally, or in writing when justified by the circumstances, only in either of the following circumstances:

E3.1.22.1. If the head of the Department or Agency supplying the statement certifies that the person who furnished the information is a confidential informant who has been engaged in obtaining intelligence information for the Government and that disclosure of his or her identity would be substantially harmful to the national interest; or

E3.1.22.2. If the GC, DoD, has determined the statement concerned appears to be relevant, material, and reliable; failure to receive and consider the statement would be substantially harmful to the national security; and the person who furnished the information cannot appear to testify due to the following:

E3.1.22.2.1. Death, severe illness, or similar cause, in which case the identity of the person and the information to be considered shall be made available to the applicant; or

E3.1.22.2.2. Some other cause determined by the Secretary of Defense, or when appropriate by the Department or Agency head, to be good and sufficient.

E3.1.23. Whenever evidence is received under items E3.1.21. or E3.1.22., above,

the applicant shall be furnished with as comprehensive and detailed a summary of the information as the national security permits. The Administrative Judge and Appeal Board may make a clearance decision either favorable or unfavorable to the applicant based on such evidence after giving appropriate consideration to the fact that the applicant did not have an opportunity to confront such evidence, but any final determination adverse to the applicant shall be made only by the Secretary of Defense, or the Department or Agency head, based on a personal review of the case record.

E3.1.24. A verbatim transcript shall be made of the hearing. The applicant shall be furnished one copy of the transcript, less the exhibits, without cost.

E3.1.25. The Administrative Judge shall make a written clearance decision in a timely manner setting forth pertinent findings of fact, policies, and conclusions as to the allegations in the SOR, and whether it is clearly consistent with the national interest to grant or continue a security clearance for the applicant. The applicant and Department Counsel shall each be provided a copy of the clearance decision. In cases in which evidence is received under items E3.1.21. and E3.1.22., above, the Administrative Judge's written clearance decision may require deletions in the interest of national security.

E3.1.26. If the Administrative Judge decides that it is clearly consistent with the national interest for the applicant to be granted or to retain a security clearance, the DISCO shall be so notified by the Director, DOHA, or designee, when the clearance decision becomes final in accordance with item E3.1.36., below.

E3.1.27. If the Administrative Judge decides that it is not clearly consistent with the national interest for the applicant to be granted or to retain a security clearance, the Director, DOHA, or designee, shall expeditiously notify the DISCO, which shall in turn notify the applicant's employer of the denial or revocation of the applicant's security clearance. The letter forwarding the Administrative Judge's clearance decision to the applicant shall advise the applicant that these actions are being taken, and that the applicant may appeal the Administrative Judge's clearance decision.

E3.1.28. The applicant or Department Counsel may appeal the Administrative Judge's clearance decision by filing a written notice of appeal with the Appeal Board within 15 days after the date of the Administrative Judge's clearance decision. A notice of appeal received after 15 days from the date of the clearance decision shall not be accepted by the Appeal Board, or designated Board Member, except for good cause. A notice of cross-appeal may be filed with the Appeal Board within 10 days of receipt of the notice of appeal. An untimely cross appeal shall not be accepted by the

Appeal Board, or designated Board Member, except for good cause.

E3.1.29.  Upon receipt of a notice of appeal, the Appeal Board shall be provided the case record.  No new evidence shall be received or considered by the Appeal Board.

E3.1.30.  After filing a timely notice of appeal, a written appeal brief must be received by the Appeal Board within 45 days from the date of the Administrative Judge's clearance decision.  The appeal brief must state the specific issue or issues being raised, and cite specific portions of the case record supporting any alleged error.  A written reply brief, if any, must be filed within 20 days from receipt of the appeal brief.  A copy of any brief filed must be served upon the applicant or Department Counsel, as appropriate.

E3.1.31.  Requests for extension of time for submission of briefs may be submitted to the Appeal Board or designated Board Member.  A copy of any request for extension of time must be served on the opposing party at the time of submission. The Appeal Board, or designated Board Member, shall be responsible for controlling the Appeal Board's docket, and may enter an order dismissing an appeal in an appropriate case or vacate such an order upon a showing of good cause.

E3.1.32.  The Appeal Board shall address the material issues raised by the parties to determine whether harmful error occurred.  Its scope of review shall be to determine whether or not:

E3.1.32.1.  The Administrative Judge's findings of fact are supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion in light of all the contrary evidence in the same record.  In making this review, the Appeal Board shall give deference to the credibility determinations of the Administrative Judge;

E3.1.32.2.  The Administrative Judge adhered to the procedures required by E.O. 10865 (enclosure 1.) and this Directive; or

E3.1.32.3.  The Administrative Judge's rulings or conclusions are arbitrary, capricious, or contrary to law.

E3.1.33.  The Appeal Board shall issue a written clearance decision addressing the material issues raised on appeal.  The Appeal Board shall have authority to:

E3.1.33.1.  Affirm the decision of the Administrative Judge;

*DoDD 5220.6, January 2, 1992*

E3.1.33.2.  Remand the case to an Administrative Judge to correct identified error.  If the case is remanded, the Appeal Board shall specify the action to be taken on remand; or

E3.1.33.3.  Reverse the decision of the Administrative Judge if correction of identified error mandates such action.

E3.1.34.  A copy of the Appeal Board's written clearance decision shall be provided to the parties.  In cases in which evidence was received under items E3.1.21. and E3.1.22., above, the Appeal Board's clearance decision may require deletions in the interest of national security.

E3.1.35.  Upon remand, the case file shall be assigned to an Administrative Judge for correction of error(s) in accordance with the Appeal Board's clearance decision. The assigned Administrative Judge shall make a new clearance decision in the case after correcting the error(s) identified by the Appeal Board.  The Administrative Judge's clearance decision after remand shall be provided to the parties.  The clearance decision after remand may be appealed pursuant to items E3.1.28.  to E3.1.35., above.

E3.1.36.  A clearance decision shall be considered final when:

E3.1.36.1.  A security clearance is granted or continued pursuant to item E3.1.2., above;

E3.1.36.2.  No timely notice of appeal is filed;

E3.1.36.3.  No timely appeal brief is filed after a notice of appeal has been filed;

E3.1.36.4.  The appeal has been withdrawn;

E3.1.36.5.  When the Appeal Board affirms or reverses an Administrative Judge's clearance decision; or

E3.1.36.6.  When a decision has been made by the Secretary of Defense, or the Department or Agency head, under to item E3.1.23., above.  The Director, DOHA, or designee, shall notify the DISCO of all final clearance decisions.

E3.1.37.  An applicant whose security clearance has been finally denied or

*DoDD 5220.6, January 2, 1992*

revoked by the DOHA is barred from reapplication for 1 year from the date of the initial unfavorable clearance decision.

E3.1.38.  A reapplication for a security clearance must be made initially by the applicant's employer to the DISCO and is subject to the same processing requirements as those for a new security clearance application.  The applicant shall thereafter be advised he is responsible for providing the Director, DOHA, with a copy of any adverse clearance decision together with evidence that circumstances or conditions previously found against the applicant have been rectified or sufficiently mitigated to warrant reconsideration.

E3.1.39.  If the Director, DOHA, determines that reconsideration is warranted, the case shall be subject to this Directive for making a clearance decision.

E3.1.40.  If the Director, DOHA, determines that reconsideration is not warranted, the DOHA shall notify the applicant of this decision.  Such a decision is final and bars further reapplication for an additional one year period from the date of the decision rejecting the reapplication.

E3.1.41.  Nothing in this Directive is intended to give an applicant reapplying for a security clearance any greater rights than those applicable to any other applicant under this Directive.

E3.1.42.  An applicant may file a written petition, under oath or affirmation, for reimbursement of loss of earnings resulting from the suspension, revocation, or denial of his or her security clearance.  The petition for reimbursement must include as an attachment the favorable clearance decision and documentation supporting the reimbursement claim.  The Director, DOHA, or designee, may in his or her discretion require additional information from the petitioner.

E3.1.43.  Claims for reimbursement must be filed with the Director, DOHA, or designee, within 1 year after the date the security clearance is granted.  Department Counsel generally shall file a response within 60 days after receipt of applicant's petition for reimbursement and provide a copy thereof to the applicant.

E3.1.44.  Reimbursement is authorized only if the applicant demonstrates by clear and convincing evidence to the Director, DOHA, that all of the following conditions are met:

E3.1.44.1.  The suspension, denial, or revocation was the primary cause of the claimed pecuniary loss; and

*DoDD 5220.6, January 2, 1992*

E3.1.44.2.  The suspension, denial, or revocation was due to gross negligence of the Department of Defense at the time the action was taken, and not in any way by the applicant's failure or refusal to cooperate.

E3.1.45.  The amount of reimbursement shall not exceed the difference between the earnings of the applicant at the time of the suspension, revocation, or denial and the applicant's interim earnings, and further shall be subject to reasonable efforts on the part of the applicant to mitigate any loss of earnings.  No reimbursement shall be allowed for any period of undue delay resulting from the applicant's acts or failure to act.  Reimbursement is not authorized for loss of merit raises and general increases, loss of employment opportunities, counsel's fees, or other costs relating to proceedings under this Directive.

E3.1.46.  Claims approved by the Director, DOHA, shall be forwarded to the Department or Agency concerned for payment.  Any payment made in response to a claim for reimbursement shall be in full satisfaction of any further claim against the United States or any Federal Department or Agency, or any of its officers or employees.

E3.1.47.  Clearance decisions issued by Administrative Judges and the Appeal Board shall be indexed and made available in redacted form to the public.

ENCLOSURE 3