UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK MOYAR, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  Civil Action No. 1:22-cv-00478 (TJK) |
| | * |
| DEPARTMENT OF DEFENSE, *et al.*, | * |
| | * |
| Defendants. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT OR, IN THE
ALTERNATIVE, TO DISMISS CASE WITHOUT PREJUDICE**

Plaintiff Mark Moyar ("Moyar") filed a procedurally proper motion for leave to file an amended complaint. In response, Defendants Department of Defense ("DOD") and United States Agency for International Development ("USAID") have filed a motion to dismiss disguised as an opposition to Moyar's Motion, arguing that the amendments would be futile. In so doing, they largely rehash the arguments previously ignored by the Court and implicitly rejected by the Circuit, while unsuccessfully attempting to argue that the numerous agency rules cited by Moyar provide absolutely no source of authority for his case, even when viewed in the lens most favorable to Moyar.

As explained in his motion for leave and the below discussion, this amended complaint is not futile because the reasons cited by the Circuit for holding that Executive Order 12,968 ("the Executive Order" or "E.O. 12,968") is not judicially enforceable are not applicable to the implementing agency regulations added to the pleading. Moreover, to the extent that Defendants should be allowed to renew their previous arguments—which is dubious at best—the Court should continue to find them unconvincing.

## ARGUMENT

Before commencing a direct discussion of Defendants' arguments, however, it is first necessary to clarify a few basic points. First, the Circuit vacated this Court's entire opinion, including the portion excusing Defendants from complying with Local Civil Rule 7(n). However, Defendants have not renewed that request, nor have they complied with Rule 7(n). The Court must accordingly direct Defendants to immediately comply and would be well within its discretion to grant Moyar's Motion on that ground alone, as he has been forced to litigate this motion without the administrative record to which he is entitled under the Rule.

Second, in the 1 October 2024 Status Conference, the Court clearly set out what it expected from the current briefing. It stated that it expected Moyar to file a motion for leave to amend the complaint or to dismiss the case without prejudice—as he did—and that it expected Defendants to file a cross-motion to dismiss the case *with* prejudice—as they did not. Rather than filing an actual motion arguing that the case should be dismissed with prejudice, for which they would be required to meet a high bar, Defendants have instead chosen not to actually ask the Court for anything except to deny Moyar's Motion, which procedurally does not present the Court with a valid alternative. Furthermore, Defendants' inclusion of substantive arguments more appropriate in a motion to dismiss muddies the waters regarding the standard that this Court should apply to Moyar's Motion. A motion to amend under Federal Rule of Civil Procedure 15(a)(2) is left to the Court's discretion, while courts are specifically directed that it "should be freely given unless there is a good reason . . . to the contrary." *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996). For this reason, these decisions are reviewed on appeal for abuse of discretion.

However, if the Court accepts Defendants' implication that it should apply the same standard as it would apply in a motion to dismiss, it would also be on firm footing, because this Circuit has observed that "review in a case of this sort is akin 'to review of a Rule 12(b)(6) dismissal based on the allegations in [an] amended complaint.'" *In re InterBank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 132 (1st Cir. 2006)). For this reason, such decisions are subject to *de novo* review on appeal. Accordingly, if the Court applies a stricter standard and still rules in Moyar's favor, it should explicitly preclude Defendants from later filing a separate motion to dismiss. A party cannot argue that a case must be dismissed, see how it works out, and then file another motion to dismiss with "better" arguments. *See* Fed. R. Civ. P. 12(g)(2) ("[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."). This is doubly true in this case, where Defendants forwent their expressly provided opportunity to file a motion to dismiss with prejudice, choosing instead to simply make their arguments in an opposition brief to a motion to amend.

With that being said, the Court should find that justice requires allowing Moyar a full opportunity to test his case on the merits, and that if Defendants wish to seek dismissal after complying with Local Rule 7(n), they may attempt to do so in a proper motion. At the very least, the Court should find that whether Moyar's case is futile is far from an obvious question, but even if it examines the matter closely, it should agree that Moyar has plausibly alleged causes of action which are entitled to discovery or summary judgment briefing.

I.   **DEFENDANTS HAVE NOT REFUTED MOYAR'S ARGUMENTS**

In the interest of judicial economy, Moyar will not unnecessarily repeat arguments made in his Motion, and to the extent that Defendants elected to directly engage with his arguments, they failed to demonstrate futility. Moyar stands behind the arguments he has already made and does not believe that Defendants have presented any arguments sufficient to refute them. As an illustrative example, the infeasibility of Defendant's position is best exemplified by its assertion that Section 10 of Defense Manual 5200.02 does not support Moyar's claim:

> However, this section does not require that the Department provide individuals with any records. Rather, it requires that the Department inform individuals of their right to "[r]equest the documents, records, and reports upon which the unfavorable national security determination was made"[.] Plaintiff does not claim that he was not informed that he could request records.

(Defs.' Mem. Opp'n to Pl.'s Mot. Leave to Amend, Dkt. #34, at 13 (filed Dec. 4, 2024) (citations omitted) [hereinafter Defs.' Opp'n].) In other words, Defendants argue that the Manual only requires DOD to inform individuals that they have a right to *request* records, but does not require it to actually *honor* such requests. In a vacuum, this might seem like a reasonable—albeit strained—reading, but this case does not take place in a vacuum, and the Court cannot ignore the inconvenient fact that DOD Manual ("DODM") 5200.02 is *implementing* Executive Order 12,968 and that DOD remains subject to Intelligence Community Policy Guidance ("ICPG") 704.3, both of which clearly codify an individual's right to *receive* non-exempt records, not just request them, as discussed below. It is therefore unreasonable for the Court to accept Defendants' suggestion that a federal agency deliberately chose to disobey a clearly worded Executive Order and only provide individuals with a right to *request* records without any assurances that the request will be processed, let alone result in the release of records.

4

With respect to the arguments that Defendants attempt to renew, their arguments are no more successful now than they were in 2022.

## II.     FOIA/PA DOES NOT PROVIDE AN ADEQUATE REMEDY

The key issue with Defendants' argument on this point is perfectly encapsulated in their final sentence: "Plaintiff is free to pursue the remedies he seeks under the Privacy Act or the FOIA, but because those statutes provide those remedies, Plaintiff's APA claims should be dismissed." (*Id.* at 7.) This sentence belies the entire preceding section, wherein Defendants cite a litany of cases in which plaintiffs attempted to litigate Freedom of Information Act and Privacy Act (collectively "FOIA/PA") decisions through the APA. In fact, the very first time Defendants make this assertion, they miss the point entirely. Defendants argue, "Recently, in cases addressing document claims similar to Plaintiff's, courts in this district have dismissed on this ground alone." (*Id.* at 5.) However, neither of these cases "address[] document claims similar to Plaintiff's" except in the most superficial way. The first case, *Haleem v. DOD*, involved requests made exclusively under FOIA/PA, *see* No. 23-1471, 2024 WL 230289, at *3 (D.D.C. Jan. 22, 2024) ("Haleem . . . submitted a series of 'new FOIA request[s]' in early 2023."), and the second case, *Bierly v. DOD*, involved FOIA/PA requests which were then "merged" with requests made under the Executive Order and relevant rules without objection, *see* No. 23-2386, 2024 WL 4227154, at *2 (D.D.C. Sept. 18, 2024). In stark contrast, Moyar has consistently disclaimed any reliance on FOIA/PA and would argue that, since he never filed a FOIA/PA request, he would legally be *unable* to litigate the denials at issue in this case. One can only imagine the motion to dismiss that Defendants might file if a plaintiff filed a FOIA/PA lawsuit over document requests which never mentioned FOIA/PA.

Furthermore, Defendants grossly mischaracterize the record when they assert that it is somehow relevant that "Plaintiff alleges that he has submitted FOIA and Privacy Act requests to both agencies seeking records about the allegations that he published classified information but has failed to receive the records he seeks." (Defs.' Opp'n at 7.) Their citation for this claim is a sentence from the *background* section of Moyar's amended complaint, which explains that *in addition* to the requests he made in this case, Moyar *also* submitted FOIA/PA requests for various types of records, many of which are not responsive to any of the requests in this case. This is a transparent attempt to mislead the Court, since Moyar explained the distinction more than two years ago and pointed out at the time that no Defendant was processing the requests at issue in this case under FOIA/PA or any other authority; they have consistently only processed *other* requests "which may or may not overlap with the E.O. 12,968 requests." (Pl.'s Opp'n Defs.' Mot. Dismiss & Mot. for Relief from LCvR 7(n), Dkt. #19, at 9 (filed Nov. 24, 2022) [hereinafter Dkt. #19].) Therefore, in contrast to *Bierly*, where the Government merged E.O. 12,968 requests with FOIA/PA requests and processed them together, Defendants in this case have instead opted to completely ignore Moyar's E.O. 12,968 requests and only process other requests made for other records under FOIA/PA. And even then, as described in Dkt. #19, Defendants are not meaningfully processing *those* requests either, although that is beyond the scope of this case.

In other words, Defendants cannot say that Moyar can litigate their refusal to take the desired actions under FOIA/PA; they can only say that he could file *other FOIA/PA requests* and then litigate *those*. However, in making this argument, they miss one key distinction: *timing*. Simply put, there is no deadline for an agency to respond to a FOIA/PA request. The statutes direct a response within twenty business days, but numerous courts have held that the only

consequence for non-compliance is that the requester can then file a lawsuit. Furthermore, there is *no* provision in E.O. 12,968 which ensures that DOD will allow an individual to wait to appeal a clearance denial until after he has received responses to *FOIA/PA requests*. Defendants' own declarant makes a point to specify that extensions of time are only granted "[w]hile *due process document requests* are pending with DCSA FOIPA." (Jones Decl., Dkt. #7-9, at 2 (filed June 23, 2022) (emphasis added).) DCSA's counsel further specified that even though "DCSA understands that [Moyar] believe[s] SOCOM and DOPSR records are relevant for [his] Response to SOR, . . . [he] will have to use the ordinary Privacy Act request process at those entities." (Email from Clark to McClanahan of 1/26/22, Dkt. #19-6 (filed Nov. 24, 2022) [hereinafter Clark Email].) In other words, if Moyar were to "use the ordinary Privacy Act request process" to seek to obtain the records he needs that are immediately relevant to his clearance denial, DCSA could—and likely *would*—force him to appeal the denial before he managed to do so. This alone makes FOIA/PA not an adequate remedy.

In contrast, the Executive Order gives agencies exactly thirty days to provide the relevant documents. An agency literally *cannot* process a clearance appeal until it has done so. Refusal to do so will constitute harmful error in an adjudication if it is not cured. *Wonders v. Dep't of the Army*, 659 Fed. App'x 646, 647-49 (Fed. Cir. 2016) (forcing a person to prosecute an appeal without the relevant records constituted a potentially harmful error, and that it was only later rendered harmless by the agency releasing the records during the process). The fact that agencies are allowed to withhold information from an E.O. 12,968 request if it is exempt under FOIA/PA does not mean that FOIA/PA, with its open-ended timeframe and lack of tolling effect on the appeal process, is an adequate alternative remedy to a specific provision explicitly written to ensure due process rights. Even if the Court accepts Mr. Jones's testimony that the review

7

process for E.O. 12,968 requests and FOIA/PA requests is the same (Jones Decl. at 2)—which it should not—even he states that E.O. 12,968 requests are given higher priority than other FOIA/PA requests, and he further admits that when DCSA makes a determination to refer records to other agencies, it does so *as a FOIA/PA request*, thereby ensuring that the receiving agency places it in its first-in, first-out FOIA/PA queue to be addressed whenever it rises to the top of the stack. (*See* Jones Decl. at 3 (referring a record responsive to Moyar's E.O. 12,968 request to USAID as a routine FOIA/PA request).) At best Jones's testimony shows that DCSA—and *only* DCSA—prioritizes E.O. 12,968 requests over other FOIA/PA requests, while other agencies are given free rein to take their time, and at worst it shows that DCSA has implemented an actual policy of violating E.O. 12,968 instead of this case being an isolated incident.

### III.    DEFENDANTS FOCUS ON THE WRONG AGENCY ACTIONS

Defendants' next argument creates a straw man to knock down by focusing on the wrong agency actions. Simply put, Moyar is not alleging that the denial of his security clearance was an action subject to review, and all of Defendants' arguments to that point are misplaced. (Defs.' Mem. at 15-17.) USAID argues that because it did not make a final decision regarding Moyar's clearance (which he never alleged), its *separate* decision to claim that the Executive Order did not apply to it is *also* not a final agency action (which he *did* allege). DCSA similarly argues that because it has not made a final decision regarding Moyar's clearance (which he never alleged), *its* separate decisions to claim that the Executive Order did not require it to release more records or direct other components to do so are also not final agency actions.

This argument fails for multiple reasons, but the most obvious reason is that Defendants' own argument demonstrates that these are final agency actions. "[T]o the extent that USAID has

8

been providing records to Plaintiff, it is in the context of FOIA requests." (*Id.* at 16.) "[A]s with USAID, the Defense Department has been responding to Plaintiff's document requests through the FOIA and Privacy Act process." (*Id.* at 17) These statements are both incredibly misleading and entirely fatal to Defendants' argument on this point. First, while Defendants are allegedly responding to Moyar's *other* FOIA/PA requests, they are *not* responding to his E.O. 12,968 requests *at all*. This is not a case where a person submits an E.O. 12,968 request and the agency treats it as a FOIA/PA request. USAID explicitly refused to respond to Moyar's E.O. 12,968 request. (Ltr. from Ohlweiler to McClanahan of 1/19/22, Dkt. #7-5, at 2 (filed June 23, 2022).) DCSA narrowly interpreted Moyar's E.O. 12,968 request to only include the records it created. (1st Am. Compl., Dkt. #32-1, ¶ 38 (filed Oct. 15, 2024).) DCSA's counsel further informed the undersigned that its refusal to provide forms for SOCOM and DOPSR was because "[t]hose records were not 'relied upon' by the DoD CAF for adjudication."[1] (Clark Email *passim*.) Not one office has responded to an E.O. 12,968 request that it is processing the request through FOIA/PA; they have all referred to *other* FOIA/PA requests which may or may not overlap with the E.O. 12,968 requests.

      Secondly, the fact that both USAID and DOD are actively defending their decisions to respond to Moyar's other FOIA/PA requests *instead of responding to his E.O. 12,968 requests* shows that those decisions—namely, the decisions not to respond to his E.O. 12,968 requests— were final agency actions. If they were not final agency actions, Defendants would not be defending their absolute right to make them; they would be arguing that they might later decide to process the E.O. 12,968 requests. This is not a case of agency inaction, where the agency

---

[1] This email also states that "DCSA FOIA/PA also made a referral to DITMAC through SIPR," although no response from DITMAC has been received as of this writing, almost three years later.

simply has not gotten around to taking an action yet. Each agency made a deliberate choice not to process Moyar's E.O. 12,968 requests.

## IV.     DUE PROCESS HAS BEEN TRIGGERED

To the extent that the Court is inclined to renew its previous holding that the due process requirements of Sec. 5.2 of the Executive Order have not yet been triggered, it should respectfully decline to do so.

As previously established, the primarily governing DOD regulation is DOD Directive 5220.6. That directive, despite being amended in 1999, only purports to follow Executive Order 10,865 and makes no mention of either Executive Order 12,968 (issued in 1995) or *any* right to request information *at any time*. *See generally Department of Defense Directive 5220.6: Defense Industrial Personnel Security Clearance Review Program* (Jan. 2, 1992), *available at* https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodd/522006p.pdf (last accessed Jan. 30, 2024). The copy of Executive Order 10,865, as amended, that this directive cites as authority similarly does not count Executive Order 12,968 as one of the relevant amendments. *Id.* at 10. It is therefore of limited utility to this discussion.

That regulation, however, does reference and incorporate "standards in DoD 5200.2-R." *Id.* § 6.1. DoD 5200.2-R has been superseded by DODM 5200.02, which provides a clear indication of the position DOD *actually* takes on this proposition. In addition to stating that SCI determinations are governed by ICPG 704.3—which will be addressed below—this Manual all but explicitly refutes the arguments that DOD makes now. It first states that the "Minimum Due Process Requirements Applicable to All" include "Informing the individual of their right to: . . . Request the documents, records, and reports upon which the unfavorable national security determination was made." DODM 5200.02 § 10.2(b). This is provided after "the unfavorable

10

determination," which is described as "[t]he LOD or LOR." *Id.* § 10.2(a). LOD and LOR are further defined as "a letter of denial (LOD) or letter of revocation . . . issued by [DCSA]." *Id.* § 7B.3(d)(5) (emphasis added). Critically, this definition is explicitly contrasted with "a tentative denial or revocation." *Id.*

The Manual further explains the chronology of the appeal process, and how it is exactly how Moyar explained it, with the request for review by an Administrative Judge being considered "the appeal." "The individual must acknowledge the receipt of the LOD or LOR and indicate in writing if they will submit an *appeal*." *Id.* § 10.2(e) (emphasis added). This "appeal" must "provid[e] the individual an opportunity to appear in person and present relevant witnesses, documents, materials, and information." *Id.* § 10.2(f). This is exactly what DOD was directing Moyar to do: "State whether or not you wish to have a hearing before an Administrative Judge, or if you wish to have the Administrative Judge issue a decision based upon the administrative record, without a hearing." (Ltr. from Smith to Moyar, Dkt. #7-8, at 1 (filed June 23, 2022).)

Furthermore, ICPG 704.3, which is explicitly referenced as the source of authority for SCI appeals, explicitly states that "[a]ny documents, records and reports upon which a denial or revocation is based [must] be provided within thirty (30) days of request." *ICPG 704.3: Denial or Revocation of Access to Sensitive Compartmented Information, other Controlled Access Program Information, and Appeals Processes* § D(1)(c) (Oct. 2, 2008), *available at* https://www.dni.gov/files/documents/ICPG/ICPG-704-3.pdf (last accessed Jan. 30, 2024). This must happen *before* the person is given "[a]n opportunity to respond . . . to request a review of the determination," *id.* § D(1)(d), and it is the "[w]ritten notice of and reasons for the results of the review" which are subject to "the right to appeal." *Id.* § D(1)(e). Therefore, regardless of the particular language used by DOD in a piece of correspondence, it is manifestly apparent that

11

both DOD and the Director of National Intelligence hold the *official* position that the right to request and receive this information comes *before* the hearing before an Administrative Judge.

These citations demonstrate that the position being currently taken by Defendants is not and has not ever been the Government's actual interpretation of Executive Order 12,968. Critically, this interpretation is shared across the Intelligence Community; the Central Intelligence Agency even provides people denied clearances the standard instructions that "[y]ou may obtain your investigative file even if you do not want the security decision reviewed."[2] It is therefore contrary to both justice and good public policy to entertain an interpretation of the meaning of an executive order which is irreconcilable with the actual policies of the agency making the argument.

## CONCLUSION

For the foregoing reasons and those presented in his Motion, the Court should grant Moyar's Motion.

Date:   January 11, 2025

                Respectfully submitted,

                /s/ Kelly B. McClanahan
                Kelly B. McClanahan
                National Security Counselors
                4702 Levada Terrace
                Rockville, MD 20853
                301-728-5908
                Kel@NationalSecurityLaw.org
                DC Bar No. 984704

                *Counsel for Plaintiff*

---

[2] This document is a standard set of appeal instructions included with all denial or revocation letters. It is not in the record, and Moyar only includes a mention here to further illustrate the type of evidence that he would be able to introduce if extrinsic evidence were allowed.